**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARY JENNIFER PERKS, an individual, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | CASE NO. 18-11176<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mary Jennifer Perks ("Plaintiff" or "Ms. Perks"), on behalf of herself and all others similarly situated, by and through her counsel, brings this Class Action Complaint ("Complaint") against Defendant TD Bank, N.A. ("TD Bank" or the "Bank"), and based upon personal knowledge with respect to herself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## **INTRODUCTION**

1. This case concerns TD Bank's unlawful business practice of imposing multiple Non-Sufficient Funds Fees ("NSF Fee") on a single consumer transaction.

2. Plaintiff brings this action on behalf of herself and all similarly situated consumers against TD Bank arising from a specific fee generation practice that violates the Bank's contracts and/or is deceptive.

3. The Deposit Account Agreement permits TD Bank to charge a $35 NSF Fee when it determines a customer's account contains insufficient funds to pay a transaction and it rejects the charge. *See* Deposit Account Agreement ("Deposit Agreement"), attached hereto as Exhibit A.

1

4. Through the imposition of NSF Fees the Bank makes hundreds of millions of dollars annually. TD Bank NSF Fees fall disproportionately on racial and ethnic minorities, the elderly, and the young, many of whom regularly carry low bank account balances.

5. Ms. Perks does not dispute the Bank's right to reject a transaction and charge a single NSF Fee, but TD Bank unlawfully maximizes its already profitable NSF Fees with deceptive practices that also violate its contract.

6. Specifically, TD Bank unlawfully assesses multiple NSF Fees on a single Automated Clearing House (ACH) transaction or check transaction. ACH transactions require the party making a payment or money transfer to provide the party's account number and TD Bank's routing number.

7. In TD Bank's sole and undisclosed view, each time the Bank unilaterally resubmits an ACH transaction or check for payment after a having been rejected for insufficient funds, it becomes a new, unique item that is subject to another NSF Fee. But TD Bank's Deposit Agreement never even hints that this counterintuitive result could be possible. Moreover, the premise is far from obvious as a matter of common sense and becomes even less so when one considers that TD Bank's own bank statements refer to the re-attempted items as "RETRY PAYMENTS"—i.e., mere iterations of the same initial item, not items *ex nihilo*.

8. TD Bank's Deposit Agreement and Personal Fee Schedule indicate that only a single NSF Fee will be charged per "item," however many times the request for payment is resubmitted. An electronic item resubmitted after an initial return for insufficient funds cannot and does not fairly become a new, unique item for fee assessment purposes.

9. As discussed more fully below, it is a breach of TD Bank's contract and of reasonable consumers' expectations for the Bank to charge more than one $35 NSF Fee on the

2

same item, since the Bank's Personal Fee Schedule explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF Fee.

10. TD Bank also breaches its duty of good faith and fair dealing when it charges multiple NSF Fees on a single transaction. Specifically, TD Bank abuses its contractual discretion by (a) resubmitting transactions when it knows full well that a customer's account lacks sufficient funds, and (b) charging NSF Fees upon resubmission.

11. This practice not only violates TD Bank's contracts and the covenant of good faith and fair dealing but is also unfair and deceptive under the consumer protection law of New York (where Ms. Perks is a citizen and resides and banks with TD Bank).

12. Ms. Perks and other TD Bank customers have been injured by these practices. On behalf of herself and the Classes, Ms. Perks seeks damages, restitution and injunctive relief for TD Bank's breach of contract and breach of the covenant of good faith and fair dealing, unjust enrichment, and violations of the New York consumer protection statute.

**PARTIES**

13. Plaintiff Mary Jennifer Perks is a citizen of New York. She maintains a checking account at TD Bank. At all times relevant, Plaintiff patronized TD Bank banking centers located in New York City.

14. Defendant TD Bank is a national bank with its headquarters and principal place of business located in Cherry Hill, New Jersey. Among other things, TD Bank is engaged in the business of providing retail banking services to consumers, including Ms. Perks and members of the Classes. TD Bank operates banking centers, and thus conducts business, throughout the State of New York, including within this District.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (Ms. Perks) is a citizen of a State different from the Defendant. The number of members of the proposed Classes in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

16. This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in New York.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District—where Ms. Perks lives and conducts her banking business with TD Bank.

## SUBSTANTIVE ALLEGATIONS

18. As described more fully herein, TD Bank's Deposit Agreement allows it to take certain steps when a TD Bank accountholder attempts a transaction but does not have sufficient funds to cover it. Specifically, the Bank may (a) authorize the transaction and charge a single $35 overdraft fee ("OD Fee"), or (b) reject the transaction and charges a single $35 NSF Fee.

19. However, TD Bank regularly assesses two or more NSF Fees on the same transaction.

20. This abusive practice is not universal in the banking industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not charge repeated NSF Fees on the same item when it is re-submitted for payment. Instead, they charge one NSF Fee even if an item

4

is submitted for payment multiple times.

21. Worse, TD Bank's Deposit Agreement never discloses this practice. To the contrary, it indicates it will not undertake this practice.

**A. Ms. Perks's Experience**

17. On September 24, 2018, Plaintiff attempted to make a one-time PayPal transfer, via an ACH transaction.

18. TD rejected payment of that item due to insufficient funds and charged Plaintiff a $35 NSF Fee.

19. Seven days later, on October 1, 2018, the same item was re-submitted for payment, and again TD rejected the item due to insufficient funds and charged Plaintiff another $35 NSF Fee.

20. In sum, *TD Bank charged Plaintiff $70 in fees to process a single payment to PayPal.*

21. Plaintiff took no affirmative action to reinitiate the item or to authorize its resubmission. Instead, TD Bank unilaterally and automatically resubmitted it a second time for payment.

22. On October 25, 2018, Plaintiff attempted to make two separate one-time PayPal transfers, via an ACH transaction, in the amounts of 99 cents and $4.99.

23. TD rejected payment of those items due to insufficient funds and charged Plaintiff a $35 NSF Fee on each.

24. Seven days later, on November 1, 2018, the same items were re-submitted for payment, and again TD rejected the item due to insufficient funds and charged Plaintiff another $35 NSF Fee on each.

25. In sum, *TD Bank charged Plaintiff $70 in fees to process a single 99 cent transfer to PayPal, and an additional $70 in fees to process a single $4.99 transfer to PayPal.*

26. Plaintiff took no affirmative action to reinitiate the items or to authorize their resubmission. Instead, TD Bank unilaterally and automatically resubmitted them a second time for payment.

27. Plaintiff understood her PayPal transactions to be single transactions as is laid out in TD Bank's contract, capable at most of receiving a single NSF Fee (if TD Bank returned it) or OD Fee (if TD Bank paid it).

28. TD Bank itself also understood the PayPal transactions to be single transactions, and its systems categorized it as such. Indeed, on Ms. Perks's account statement, TD Bank described subsequent attempts to debit the transactions as a "RETRY PYMT."

**B. The Imposition of Multiple NSF Fees on a Single Transaction Violates Express Promises and Representations Made by the Bank**

24. The Deposit Agreement provides the general terms of Ms. Perks's relationship with the Bank and makes promises and representations regarding how transactions will be processed and when NSF Fees and OD Fees may be assessed. The Deposit Agreement defines the term "item," and the circumstances under which items can trigger NSF Fees or OD Fees.

25. The Deposit Agreement contains material misrepresentations and omissions indicating that NSF Fees will only be assessed once per transaction or "item"—defined as a customer request for payment or transfer—when in fact TD Bank regularly charges two or more NSF Fees per transaction or item.

26. TD Bank's account documents state that it will charge $35 per "item" that is returned due to insufficient funds.

27. As used throughout the Deposit Agreement, the term "item" must describe all

6

iterations of a given instruction for payment or deposit from a checking or savings account. For example, "item" is defined as:

> An "item" includes a ***check, substitute check, purported substitute check, remotely created check or draft, electronic transaction, draft, demand draft, image replacement document, indemnified copy,*** ATM withdrawal or transfer, debit card point-of-sale transaction, pre-authorized debit card payment, automatic transfer, telephone-initiated transfer, ***ACH transaction,*** online banking transfer to or from Accounts at TD Bank or external transfers to other institutions, online bill payment instruction, payment to or from other people (Send Money with Zelle® transaction), withdrawal or deposit slip, in-person transfer or withdrawal, cash ticket, deposit adjustment, wire transfer, and any other instruction or order for the payment, transfer, deposit or withdrawal of funds.

*See Exhibit A*.

28.  In the section of the Deposit Agreement titled "Reasons Why We May Refuse to Pay an Item," TD Bank states it may refuse to make a payment when the "item" "is drawn in an amount greater than the amount of funds then available for withdrawal in your Account (see the Funds Availability Policy) or which would, if paid, create an overdraft." This section does not create a right for TD Bank to resubmit any item returned for insufficient funds.

29.  Because Ms. Perks had only made one authorization for payment, there is no new "item" when that transaction is rejected then automatically resubmitted for payment.

30.  In sum, the same instruction for payment cannot conceivably become a new "item" each time it is rejected for payment and then resubmitted, especially when—as here—Ms. Perks took no action to resubmit it.

31.  Even if an instruction for payment is re-submitted, it is still the same "item." It is simply another attempt at Ms. Perks's original order or instruction.

32.  This is important because the Personal Fee Schedule—which is the specific document disclosing fee assessments on checking account—states that a single NSF Fee of $35 is assessed "per item":

*Overdraft – return (NSF)/overdraft – paid (per item) ..............................$ 35.00*

*See Exhibit B.*

33. This code-like disclosure gives no indication that the same "item" is eligible to incur *multiple* NSF Fees.

34. The Personal Fee Schedule is incorporated in the Deposit Agreement.

35. Moreover, the Deposit Agreement and Personal Fee Schedule never describe a circumstance where TD Bank may assess multiple NSF Fees for a single check or ACH transaction that was returned for insufficient funds and later resubmitted one or more times and returned again.

36. In sum, TD Bank promises that one $35 NSF Fee will be assessed per item, and "item" must mean all iterations of the same instruction for payment. As such, TD Bank breached the contract when it charged more than one fee per item.

37. Consistent with express representations in the contract by way of the incorporated Personal Fee Schedule, reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in TD Bank's fee schedule and Deposit Agreement.

38. Upon information and belief, TD Bank has this same understanding in practice, since its systems code items in a way that alerts the Bank when the same item is being re-submitted for payment.

39. The Personal Fee Schedule bars TD Bank from assessing multiple NSF Fees on the same item.

40. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the bank will *either* authorize (resulting in *an* overdraft item) or reject (resulting

8

in *a* returned item) when it decides there are insufficient funds in the account. Nowhere does TD Bank disclose that it will treat each resubmission of a check or ACH payment as a separate item, subject to additional fees.

41. Customers reasonably understand, based on the language of the Deposit Agreement, that resubmissions of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item.

**C. The Imposition of Multiple NSF Fees on a Single Transaction Breaches TD Bank's Duty of Good Faith and Fair Dealing**

42. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations. That means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Ms. Perks and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the form agreement the Bank foisted on Ms. Perks—TD Bank has provided itself numerous discretionary powers affecting Ms. Perk's bank account. But instead of exercising that discretion in good faith and consistent with Ms. Perks's reasonable expectations, the Bank abuses that discretion to take money out of Ms. Perks's account without her permission and contrary to her reasonable expectations that she will not be charged multiple fees for the same transaction.

43. As set forth in its Deposit Agreement the Bank "*may* charge a non-sufficient funds (NSF), returned item, overdraft, or similar fee." *Id.* (emphasis supplied). Given that TD

Bank always knows its customers' account balances, it could simply not resubmit a transaction when a customer's account lacks sufficient funds. This would result in a single NSF fee, rather than two or more NSF fees. By exercising its discretion in its own favor—and to the prejudice of Ms. Perks and other customers—by resubmitting a transaction when it knows a customer's account lacks funds and then charging additional NSF Fees, TD Bank abuses the power it has over Ms. Perks and her bank account and acts contrary to her reasonable expectations under the Deposit Agreement. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

## CLASS ALLEGATIONS

44. Ms. Perks brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

45. The proposed "Classes" are defined as:

**Class 1 – Nationwide Multiple NSF Class**
All TD Bank checking account holders in the United States who, during the applicable statute of limitations, were charged multiple NSF Fees on an item (the "Multiple NSF Class").

**Subclass 1 – New York Multiple NSF Class**
All TD Bank checking account holders in New York who, during the applicable statute of limitations, were charged multiple NSF Fees on an item (the "New York Subclass").

Hereinafter, Class 1 and Subclass 1 are collectively referred to as the "Classes."

46. Ms. Perks reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

47. Specifically excluded from the Classes are any entities in which TD Bank has a controlling interest, or which have a controlling interest in TD Bank, TD Bank's legal

10

representatives, assigns, and successors, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

48. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identities of whom are within the exclusive knowledge of TD Bank and can be readily ascertained only by resort to TD Bank's records.

49. The claims of the representative plaintiff are typical of the claims of the Classes in that the representative plaintiff, like all members of the Classes, was charged multiple NSF Fees on a single transaction. The representative plaintiff, like all members of the Classes, has been damaged by TD Bank's misconduct in that she has been assessed unfair and unconscionable NSF Fees. Furthermore, the factual basis of TD Bank's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Ms. Perks has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

50. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

51. Among the questions of law and fact common to the Classes include:

    a. Whether TD Bank violated contract provisions by charging multiple NSF Fees on the same transaction;

    b. Whether TD Bank breached its covenant of good faith and fair dealing through its NSF Fee policies and practices;

    c. Whether TD Bank was unjustly enriched through its NSF Fee policies and practices;

    d. Whether TD Bank violated the consumer protection law of New York

through its NSF Fee policies and practices;

  e. The proper method or methods by which to measure damages; and

  f. The declaratory and injunctive relief to which the Classes are entitled.

52. Ms. Perks is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Ms. Perks is an adequate representative and will fairly and adequately protect the interests of the Classes.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the classes will continue to suffer losses and TD Bank's misconduct will proceed without remedy.

54. Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

55. Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all Class members, is at risk of additional NSF Fees on repeated resubmissions of transactions that she did not request or authorize. Plaintiff and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain TD Bank

from continuing to commit its unfair and illegal actions.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of the Classes)**

56. Ms. Perks realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

57. Ms. Perks and TD Bank have contracted for bank account services, as embodied in TD Bank's Deposit Agreement and related documentation.

58. TD Bank's account documents explicitly state that, when a customer lacks sufficient funds to cover a transaction, the Bank may either (a) authorize the transaction and charge a single OD Fee, or (b) reject the transaction and charge a single NSF fee. TD Bank regularly violates its contractual promises by charging multiple NSF Fees on a single transaction.

59. Under the laws of the states where TD Bank does business, parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations. That means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a manner that is fair to Ms. Perks and the Classes and is prohibited from exercising its discretion to pile on ever greater penalties on them. Here—in the form agreements the Bank foisted on Ms. Perks and the Classes—TD Bank has provided itself numerous discretionary powers affecting their bank accounts.

13

60. Instead of exercising that discretion in good faith and consistent with Ms. Perks's and the Classes' reasonable expectations, the Bank abuses that discretion to take money out of their accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple NSF Fees for the same transaction. Specifically, TD Bank regularly (a) resubmits previously declined transactions, even when a customer's account lacks sufficient funds, and (b) charges TD Bank Account Fees upon resubmission of previously declined transactions.

61. TD Bank further breaches the covenant of good faith and fair dealing by charging more than one NSF Fee on a single transaction.

62. By exercising its discretion to enrich itself by gouging its consumers, TD Bank consciously and deliberately frustrates the agreed common purposes of the contract and disappoints the reasonable expectations of Ms. Perks and members of the Classes, thereby depriving them of the benefit of their bargain.

63. Ms. Perks and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

64. Ms. Perks and members of the Classes have sustained damages as a result of TD Bank's breaches of the Deposit Agreement.

**SECOND CLAIM FOR RELIEF**
**New York General Business Law, N.Y. Gen. Bus. Law § 349 *et seq*.**
**(On Behalf of the New York Subclass)**

65. Ms. Perks realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

66. TD Bank's practice of charging multiple NSF Fees on a single transaction violates New York General Business Law § 349 ("NYGBL § 349").

67. NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

68. As one of the largest banks in the United States with multiple branch locations in New York, Defendant conducted business, trade or commerce in New York State.

69. In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant's actions were directed at consumers.

70. In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

    a. Defendant misrepresented material facts, pertaining to the sale and/or furnishing of banking services, to the New York Subclass by representing and advertising that it would only assess a single $35 returned item fee for a single transaction; and

    b. Defendant omitted, suppressed, and concealed the material fact that it would charge multiple $35 returned items fees for a single transaction.

96. Defendant systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Subclass.

97. Defendant willfully engaged in such acts and practices, and knew that it violated NYGBL § 349 or showed reckless disregard for whether it violated NYGBL § 349.

98. As a direct and proximate result of Defendant's deceptive trade practices, New York Subclass Members suffered injury and/or damages, including the payment of multiple $35 returned item fees on a single transaction and the loss of the benefit of their respective bargains with TD Bank.

99. The above unfair and deceptive practices and acts by TD Bank were immoral,

unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

100. Further, TD Bank's conduct was substantially injurious to Ms. Perks and members of the putative New York Subclass in that they were forced to pay NSF Fees they were told they would not incur.

101. TD Bank's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the New York Subclass.

102. Had Ms. Perks and the members of the New York Subclass known they could be charged more than one NSF fee on a single transaction, they would have made different payment decisions so as to avoid incurring such fees.

103. As a result of TD Bank's violations of the NYGBL § 349, Ms. Perks and members of the New York Subclass have paid and will continue to pay NSF Fees and OD Fees. Accordingly, they have suffered and will continue to suffer actual damages.

104. Accordingly, Plaintiff and New York Subclass Members are entitled to relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Classes)**

105. Ms. Perks realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

106. Ms. Perks, on behalf of herself and the Classes, asserts a common law claim for

unjust enrichment.

107. By means of TD Bank's wrongful conduct alleged herein, TD Bank knowingly provided banking services to Ms. Perks and members of the Classes that was unfair, unconscionable, and oppressive.

108. TD Bank knowingly received and retained wrongful benefits and funds from Ms. Perks and members of the Classes. In so doing, TD Bank acted with conscious disregard for the rights of Ms. Perks and members of the Classes.

109. As a result of TD Bank's wrongful conduct as alleged herein, TD Bank has been unjustly enriched at the expense of, and to the detriment of, Ms. Perks and members of the Classes.

110. TD Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

111. Under the common law doctrine of unjust enrichment, it is inequitable for TD Bank to retain the benefits it received, and is still receiving, without justification, from the imposition of NSF Fees and OD fees on Ms. Perks and members of the Classes in an unfair, unconscionable, and oppressive manner. TD Bank's retention of such funds constitutes unjust enrichment.

112. The financial benefits derived by TD Bank rightfully belong to Ms. Perks and members of the Classes. TD Bank should be compelled to disgorge in a common fund for the benefit of Ms. Perks and members of the Classes all wrongful or inequitable proceeds received by them. Further, a constructive trust should be imposed upon all wrongful or inequitable sums received by TD Bank traceable to Ms. Perks and the members of the Classes.

113. Ms. Perks and members of the Classes have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Perks, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

a. certifying the proposed Classes;

b. declaring TD Bank's NSF Fee policies and practices to be wrongful, unfair and unconscionable;

c. enjoining TD Bank from charging more than one NSF Fee for any single transaction;

d. enjoining TD Bank from materially misrepresenting its true fee processing practices;

e. granting restitution of all NSF Fees paid to TD Bank by Ms. Perks and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

f. granting disgorgement of the ill-gotten gains derived by TD Bank from its misconduct;

g. awarding actual damages in an amount according to proof;

h. awarding statutory damages;

i. awarding pre-judgment interest at the maximum rate permitted by applicable law;

j. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

k. awarding costs and disbursements assessed by Ms. Perks in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

l. awarding such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Ms. Perks and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: November 30, 2018

Respectfully submitted,

/s/ James J. Bilsborrow

James J. Bilsborrow
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, New York 10003
(212) 558-5500
*jbilsborrow@weitzlux.com*

Jeffrey D. Kaliel (pending *pro hac vice*)
Sophia Gold (pending *pro hac vice*)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Jeff Ostrow (pending *pro hac vice*)
Jonathan M. Streisfeld (pending *pro hac vice*)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*

Richard E. Shevitz (pending *pro hac vice*)
Lynn A. Toops (pending *pro hac vice*)
Vess A. Miller (pending *pro hac vice*)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
*rshevitz@cohenandmalad.com*
*ltoops@cohenandmalad.com*

*vmiller@cohenandmalad.com*

*Attorneys for Plaintiff and the Putative Classes*