**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARY JENNIFER PERKS, MARIA NAVARRO-REYES on behalf of themselves and all others similarly situated, | CASE NO. 1:18-CV-11176-DAB |
| Plaintiffs, | |
| v. | |
| TD BANK, N.A., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Introduction ...................................................................................................................... 1

Background of the Litigation .......................................................................................... 2

Mediation and Settlement Negotiations ....................................................................... 5

Summary of the Proposed Settlement Terms ............................................................... 6

I.      The Settlement Class Definition ........................................................................ 6

II.     Benefits of the Settlement .................................................................................... 7

        A.      The $41.5 million Settlement ................................................................ 7

        B.      Class Member Payments ....................................................................... 8

        C.      Disposition of Residual Funds .............................................................. 9

        D.      Settlement Administrator ...................................................................... 9

III.    Class Notice ......................................................................................................... 10

IV.     Opt Out Procedures ............................................................................................ 11

V.      Objection Procedures ......................................................................................... 11

VI.     Attorneys' Fees, Costs, and Service Awards .................................................... 12

VII.    Releases ................................................................................................................. 12

VIII.   Change in Disclosures ........................................................................................ 12

Argument ......................................................................................................................... 13

I.      The Court "will likely be able to" approve the Settlement as "fair, reasonable, and
        adequate" under Rule 23(e)(2). ........................................................................ 13

        A.      The legal standard for preliminary approval. ................................... 13

II.     The proposed Settlement meets the requirements for preliminary approval. ................. 15

        A.      The Class Representatives and Class Counsel have adequately represented the
                Class. ...................................................................................................... 15

        B.      The Settlement was negotiated at arm's length. ............................... 17

        C.      The relief provided for the Settlement Class is adequate, taking into account the
                relevant factors. .................................................................................... 19

III.    The Court will "likely be able to" certify the Settlement Class for purposes of entering
        judgment on the Settlement. .............................................................................. 30

        A.      The Settlement Class meets the requirements of Rule 23(a). ........... 31

        B.      The Settlement Class meets the requirements of Rule 23(b)(3). ....... 34

IV.     The Court should approve the forms of notice and direct notice to be sent to the
        Settlement Class.................................................................................................... 36

V.      The Court should schedule a final approval hearing. ......................................... 37

Conclusion ........................................................................................................................ 37

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................................ 33, 34

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................... 28

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ........................................................................................... 25

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007)......................................................................................... 28

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ................................................................ 14, 34

*Choy v. Space Coast Credit Union*, No. 94920472 (Fla. Cir. Ct. May 7, 2020) ......................... 23

*Clapp v. Accordia Life & Annuity Co.*, No. 2:17-cv-02097-CSB-EIL (C.D. Ill. June 23, 2020) (ECF 66)............................................................................................................... 18

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)........................................................................................... 18

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ..................................... 31

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007)......... 34

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ....................................................... 15, 20

*Fleischer v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)................................................................................ 18, 29

*Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176 (S.D.N.Y. 2005).................................................. 33

*Foltz v. Matanuska Valley Valley Fed. Credit Union*, No. 3AN-20-06666CI (Alaska Super Ct. Jan. 12, 2021)........................................................................................................ 23

*Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014)...................................................................................................... 32

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir.), *cert. denied*, 140 S. Ct. 385, 205 L. Ed. 2d 218 (2019) ........................................................... 28

*Gortat v. Capala Bros.*, 257 F.R.D. 353 (E.D.N.Y. 2009) ..................................................... 31

*Gulbankian v. MW Mfrs., Inc.*, No. CIV.A. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) ............................................................................................................ 18

*Gunter v. United Fed. Credit Union*, No. 3:15–cv–00483–MMD–WGC, 2017 WL 4274196 (D. Nev. Sept. 24, 2017) .......................................................................................................... 31, 33

*Hadel v. Gaucho, LLC*, No. 15 Civ. 3706, 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ......... 13

*Haines v. Washington Trust Bank*, No. 20-2-10459-1 SEA (Wash. Super. Ct. Nov. 10, 2020) .. 23

*Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399 (S.D.N.Y. 2009) ................... 21

*Handschu v. Special Services Div.*, 787 F.2d 828 (2d Cir. 1986).................................................. 36

*Hayes v. Harmony Gold Min. Co.*, No. 08 CIV. 03653 BSJ, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) *aff'd,* 509 F. App'x 21 (2d Cir. 2013)......................................................................... 29

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015)............................................................................................................. 18

*In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......................................................................................................................................... 17

*In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011)..................................... 18

*In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011)..................................... 31

*In re EVCI Career Coll.*, No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)....... 25

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................................... 28

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................................... 13

*In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)............... 24

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012)............................................................. 26

*In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............. 20, 21, 24

*In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .......................................................................................................................................... 21

*In re Marsh & McLennan, Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)............................................................................................................ 24

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124 (S.D.N.Y. 2008)............................. 21

*In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013)............................................................................................................ 33

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. Mar. 20, 1997) .................... 18

*In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760 (2d Cir. 2020) ........................................... 21

*In re Prudential Inc. Secs. Ltd. P'ships Litig.*, MDL No. 1005, M-21-67, 1995 WL 798907
(S.D.N.Y. Nov. 20, 1995) ........................................................................................................ 21

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136 (D.S.C. 2018).... 31, 32, 34

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. 6:15MN02613 (D.S.C. Jan. 9, 2020)
(ECF 233)................................................................................................................................. 29

*In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................. 30

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y.
Nov. 7, 2007) ........................................................................................................................... 29

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d
Cir. 1986) ................................................................................................................................. 17

*In re: Checking Account Overdraft Litig. (Commerce Bank)*, No. 1:09-MD-02036-JLK, 2013
WL 11319243 (S.D. Fla. Aug. 2, 2013)................................................................................... 29

*In re: Checking Account Overdraft Litig. (JP Morgan Chase Bank)*, No. 09-MD-02036-JLK
(S.D. Fla. Dec. 19, 2012) (ECF 3134) .................................................................................... 29

*In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.) ................................. 22

*Jones v. Washington State Employees' Credit Union*, No. 20-2-06596-5 (Wash. Super. Ct. Nov.
3, 2020) .................................................................................................................................... 23

*Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va.
Aug. 14, 2019) ......................................................................................................................... 23

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005)............................................ 25

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................... 24, 30

*Marical v. Boeing Employees' Credit Union*, No. 19-2-20417-6 KNT (Wash. Super. Ct. Oct. 31,
2019) ........................................................................................................................................ 23

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ........................................................... 31, 33

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)................................................... 35

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)................................................. 13

*Millien v. Madison Square Garden Co.*, No. 17-CV-4000 (AJN), 2020 WL 4572678 (S.D.N.Y.
Aug. 7, 2020) ........................................................................................................................... 17

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ........................................................ 35

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................ 17

*Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14CV7539MKBCLP, 2020 WL 5995978 (E.D.N.Y. Apr. 21, 2020), *report and recommendation adopted sub nom.*, 2020 WL 5995650 (E.D.N.Y. Oct. 8, 2020) ........................................................................................ 29

*Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) .... 26

*Page v. Alliant Credit Union*, No. 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020) .. 22

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................................ 33

*Rubio-Delgado v. Aerotek, Inc.*, No. 13-CV-03105-SC, 2015 WL 3623627 (N.D. Cal. June 10, 2015) ............................................................................................................................................ 18

*Saunders v. Y-12 Fed. Credit Union*, No. E2020-00046-COA-R3-CV, 2020 WL 6499558 (Tenn. Ct. App. Nov. 5, 2020) ............................................................................................................... 23

*Smith v. Bank of Hawaii*, No. 16-00513-JMS-WRP, 2019 WL 3297301 (D. Haw. Jan. 30, 2019), *report and recommendation adopted in part, rejected in part*, 2019 WL 2712262 (D. Haw. June 28, 2019) .............................................................................................................................. 31

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ... 24

*Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279 (S.D.N.Y. 2012) ........................................ 35

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) ............................................ 32

*Toth v. Scott Credit Union*, No. 20-CV-00306-SPM, 2021 WL 535549 (S.D. Ill. Feb. 12, 2021) ...................................................................................................................................................... 23

*Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 CIV. 6094 PAE, 2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ............................................................................................................................ 21

*Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22 (2d Cir. 2014) ........................................ 36

*Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...................................................................................................................................... 28, 29

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................. 32

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* ("*Visa*"), 396 F.3d 96 (2d Cir. 2005) .................. passim

*Winamaki v. Umpqua Bank*, No. 19CV52252 (Or. Cir. Ct. Oct. 20, 2020) .................................. 23

*Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531(FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .................................................................................................................................... 36

vi

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ................................................... 32

**Other Authorities**

Manual for Complex Litig. (Third) (1995) .................................................................................... 17

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... passim

Individual Practices in Civil Cases, Rule 7 ............................................................................ 15, 27

## INTRODUCTION

The proposed $41.5 million settlement of this class action ($20.75 million in cash and an equivalent amount in debt forgiveness) represents an excellent recovery for the Settlement Class in this groundbreaking case—one of the first cases in the country challenging the banking practice of charging an insufficient funds fee ("NSF Fee") on an item that had previously been returned for insufficient funds (and had an NSF Fee assessed) but was later resubmitted by the merchant for payment again and charged an additional NSF Fee ("Retry NSF Fees"). When filed two and a half years ago, Plaintiffs' Complaint sought recovery under a novel theory of liability that had never before been endorsed by a court or challenged by a governmental entity or consumer watchdog. After extensive discovery, expert analysis, several months of settlement negotiations, and two mediations, the proposed Settlement before the Court—which includes $41.5 million in direct monetary benefits to Settlement Class Members, plus an agreement by Defendant to pay $500,000 in notice and administration expenses—represents a recovery of between 42-70% of the estimated damages at trial. *See generally* Ex. 1, Settlement Agreement and Releases. In addition, after Plaintiffs filed this lawsuit, Defendant improved its account agreements to disclose the Retry NSF Fee practice to its customers for the first time. Given the risks and uncertainties of continued litigation, including risks on a contested class certification motion, a Rule 23(f) appeal of class certification, summary judgment, trial, and appeal of any verdict, the proposed Settlement easily meets the Second Circuit's standards for preliminary and, ultimately final, approval.

In addition to the monetary recovery, the Settlement is an exemplar of class action settlement best practices. Substantial benefits will be placed directly in the hands of Settlement Class Members without the requirement of a claim form or any action on their part whatsoever. Settlement Class Members will receive cash or forgiveness of debt owed to the Bank without lifting a finger. And not one penny will revert under any circumstance to Defendant. For all these

reasons, the Court should grant preliminary approval so that notice of the proposed Settlement can be provided to the Settlement Class, the case can proceed to final approval, and Settlement Class Members can receive the benefits of the Settlement.

Plaintiffs, therefore, respectfully request that the Court enter the proposed Preliminary Approval Order attached as Exhibit 3 to the Settlement Agreement and Exhibit 1 to the Motion for Preliminary Approval and (1) find that it is likely to approve the terms of the Settlement under Rule 23(e)(2); (2) find that it will likely be able to certify the Settlement Class for settlement purposes only under Rule 23(e)(1)(B); (3) approve the notice program set forth in the Settlement and approve the form and content of the notices; (4) approve the procedures for Settlement Class Members to exclude themselves from the Settlement or to object to the Settlement; (5) appoint Plaintiffs' counsel as Class Counsel; (6) appoint the named Plaintiffs as representatives of the Settlement Class; and (7) schedule a Final Approval Hearing to be held approximately 180 days after the entry of the Preliminary Approval Order to determine whether to finally approve the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards to Plaintiffs.

## BACKGROUND OF THE LITIGATION

On November 30, 2018, Plaintiff Mary Jennifer Perks filed a putative class action Complaint in this Court on behalf of a nationwide class of customers who were charged Retry NSF Fees by TD Bank, N.A. ("TD Bank" or "Defendant"). Dkt. 4. The Complaint asserted claims for breach of contract and breach of the covenant of good faith and fair dealing, as well as unjust enrichment. *Id.* at ¶ 12. On behalf of a New York subclass, the Complaint asserted claims under the New York General Business Law. *Id.* at ¶¶ 65-104. On February 5, 2019, Defendant filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 25.

2

On February 19, 2019, Plaintiff Perks filed her Amended Class Action Complaint, which added Maria Navarro-Reyes as a named Plaintiff, added a Florida subclass, and included many additional allegations addressing arguments made in TD Bank's motion to dismiss as well as industry usage of certain important contractual terms. *See generally* Dkt. 28. On March 22, 2019, Defendant filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Class Action Complaint. Dkt. 31. Plaintiffs opposed the Motion on April 19, and Defendant filed its reply on May 10. Dkts. 41, 42. While the motion was pending, the parties filed multiple notices of supplemental authority. Dkts. 43, 45, 47-49.

On March 17, 2020, the Court entered a Memorandum Opinion and Order, granting in part and denying in part Defendant's Motion to Dismiss. Dkt. 54. The Court denied the Motion to Dismiss Plaintiffs' breach of contract claim and granted dismissal of Plaintiffs' breach of implied covenant of good faith, New York General Business Law § 349, and unjust enrichment claims. *Id.* at 4, 7-8. On April 14, 2020, Defendant filed its Answer and Defenses to the Amended Class Action Complaint. Dkt. 58.

After the Court's Memorandum and Order on the Motion to Dismiss, the Parties engaged in significant discovery efforts. Ex. 2, Joint Decl. of Toops & Kaliel ("Joint Decl.") at ¶¶ 7-17. The parties negotiated and submitted to the Court a Protective Order and a Stipulated Document Production Protocol. *See* Dkts. 66, 67. The parties exchanged written discovery requests and responses. Joint Decl. at ¶¶ 10, 13.

On June 18, 2020, Defendant began its document production. *Id.* at ¶ 10. The parties immediately identified disputes on the scope of discovery and began meeting and conferring on various discovery issues, such as custodial ESI searches and the production of data on resubmitted

transactions. *Id.* As a product of the parties' meet and confer efforts, on July 1, 2020, Plaintiffs served revised written discovery on Defendant. *Id.*

Beginning on May 15, 2020, the parties submitted monthly discovery status reports to the Court. Dkts. 62, 68, 69, 74, 77. Shortly thereafter, the parties presented to the Court a dispute regarding Defendant's data production. Dkt. 69 at 1. On July 29, 2020, the parties appeared before the Court, and the Court ordered Defendant to produce all discovery data on resubmitted transactions no later than August 12, 2020. Dkt. 71.

Based on the Court's order as well as the parties' frequent and ongoing meet and confer efforts, Defendant made supplemental document productions on July 15, 2020, August 5, 2020, August 21, 2020, August 28, 2020, September 15, 2020, September 16, 2020, September 22, 2020, September 26, 2020, and October 31, 2020. Joint Decl. at ¶ 12. In total, Defendant's productions comprised tens of thousands of pages of documents and an extensive data production of years of Defendant's banking transaction data. *Id.*

In addition to written discovery, Plaintiffs took the deposition of Defendant's 30(b)(6) corporate representative on September 17, 2020. *Id.* at ¶ 16. Plaintiffs were also preparing for further 30(b)(6) corporate representative depositions and depositions of other key executives of Defendant prior to the case being stayed for mediation. *Id.*

Plaintiffs also made productions of documents and responded to written discovery. *Id.* at ¶¶ 13-14. Plaintiff Perks sat for a full day deposition on September 28, 2020. *Id.* at ¶ 16. Plaintiffs also served non-party subpoenas on numerous non-party banks as well as the National Automated Clearing House Association (NACHA). Dkts. 63, 75, 84. Plaintiffs' counsel received and reviewed numerous documents in response to these subpoenas and met and conferred with the financial

institutions regarding the scope of the production of documents in response to the subpoenas. Joint Decl. at ¶ 17.

On September 15, 2020, Plaintiffs reported to the Court that they had been continuing to attempt to address deficiencies in the production by Defendant. Dkt. 77 at 2. Unable to resolve the dispute, on September 23, 2020, Plaintiffs asked the Court to order Defendant to produce within two weeks (a) ESI responsive to Plaintiffs' discovery requests; (b) data reflecting returned checks (including check numbers); and (c) data reflecting overdraft fees on ACH and check items that have previously been returned. Dkt. 78 at 3. On September 28, 2020, Defendant responded to Plaintiffs' September 23, 2020 request, and on October 1, 2020, the Court ordered the parties to meet and confer and propose to the Court a new discovery deadline by October 9, 2020. Dkts. 80, 81.

On October 2, 2020, the parties requested a stay of all pretrial deadlines pending private mediation. Dkt. 82. That same day, the Court granted the parties' request and adjourned all upcoming deadlines. Dkt. 83.

## MEDIATION AND SETTLEMENT NEGOTIATIONS

In October 2020, Professor Eric Green agreed to conduct a private mediation in this case. Ex. 3, Green Decl. at ¶ 7. The parties and Professor Green agreed to a mediation schedule that included extensive pre-mediation briefing by the parties and a mediation to be held in November. *See id.*

Following the submission of the parties' briefs on November 9, 2020 and multiple pre-mediation calls with the respective parties, Professor Green supervised a day-long mediation session on November 20, 2021 via videoconference. *Id.* at ¶ 8. The matter did not settle during the first mediation session. *Id. at ¶ 9.*

5

Subsequently, the parties and their experts performed additional data analysis and legal research. *Id.* at ¶ 9. The data analyses included matters relating to: ACH items coded as Retry payments prior to the NACHA's requirement that such items bear a "RETRY PYMT" code; ACH items not coded as "RETRY PYMT"; refunded fees; and accounts closed with a negative balance. Joint Decl. at ¶ 20. The parties submitted additional mediation briefs to Professor Green prior to a second mediation session on January 26, 2021, which took place via videoconference. Green Decl. at ¶ 9. After the conclusion of the mediation, the parties reached a settlement in principle. *Id.* at ¶11.

The Parties notified the Court of the agreement in principle on February 1, 2021. Dkt. 87. The tentative agreement allowed Plaintiffs to perform confirmatory discovery regarding certain aspects of the data and analysis performed by TD Bank's experts regarding damages. Joint Decl. at ¶ 22. On February 19, 2021, Plaintiffs' counsel and their expert extensively interviewed TD Bank's experts as part of this confirmatory discovery process. *Id.*

The parties worked together for over three months to negotiate the terms of a full settlement agreement and seek bids from settlement administrators. *Id*. at ¶¶ 23, 29.

## SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The proposed Settlement provides for agreed certification of a Settlement Class, notice, the cash and debt forgiveness benefits to the Settlement Class Members, and a release relating to Retry NSF Fees.

## I.    The Settlement Class Definition

The Settlement Class is defined as:

All current and former holders of TD Bank, N.A. consumer checking Accounts who, during the Class Period, were assessed at least one Retry NSF Fee. Excluded from the Settlement Class are Defendant, its parents, subsidiaries, affiliates, officers and directors; all Settlement Class members who make a timely election to be

6

excluded; and all judges assigned to this litigation and their immediate family members.

Settlement at ¶ 55. The parties agree, solely for the purposes of settlement, that the Settlement Class meets the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

## II.      Benefits of the Settlement

### A.      The $41.5 million Settlement.

The first monetary benefit of the Settlement is TD Bank's payment of $20,750,000 in cash into the Settlement Fund. Settlement at ¶ 64. This payment will be made within 14 days of preliminary approval and will earn interest that accrues to the benefit of the Settlement Class. *Id.* In no event does any of the Settlement Fund revert to TD Bank. *Id.* at ¶ 83(d)(iv).

In addition, TD Bank will issue monetary forgiveness of $20,750,000 in Uncollected Retry NSF Fees of Settlement Class Members whose accounts are closed at TD Bank and had amounts owing. *Id.* at ¶ 84. Forgiveness will be automatic 90 days after the Effective Date of the Settlement. *Id.* at ¶ 86. Within 90 days of the Effective Date, Defendant will update any negative reporting to ChexSystems or credit reporting agencies with respect to Settlement Class Members who receive forgiveness of Uncollected Retry NSF Fees. *Id.* Defendant shall notify Class Counsel once the debt forgiveness has been applied. *Id.*

A Settlement Class Member whose Uncollected Retry NSF Fees are less than the total Retry NSF Fees on his or her Account may receive *both* Forgiveness of Uncollected NSF Fees under this section and a distribution of Settlement Class Payments. *Id.*

In addition to the monetary benefits, TD Bank is responsible for paying notice and settlement administration costs up to $500,000 on top of the total $20.75 million in payments from the Settlement Fund and $20.75 million in forgiveness of Uncollected Retry NSF Fees. *Id.* at ¶ 71.

### B.    Class Member Payments

The Net Settlement Fund will be distributed to Settlement Class Members by direct deposit to the accounts of existing customers and by check mailed directly to former customers. *Id.* at ¶ 83(d)(iii).

For those Settlement Class Members who are Current Account Holders at the time of distribution of the Settlement Fund, a credit for the Settlement Class Member Payment shall be deposited directly into the Settlement Class Member's TD Bank account. *Id.* at ¶ 83(d)(iii)(1). If Defendant is unable to complete certain credit(s), Defendant shall return the total amount of unsuccessful Settlement Class Member Payments back to the Settlement Administrator to be paid by check. *Id*.

For those Settlement Class Members who are Former Account Holders at the time of the distribution of the Net Settlement Fund or who at that time do not have an Account, they shall be sent a check by the Settlement Administrator at the address used to provide the notice, or at such other address as designated by the Settlement Class Member. *Id.* at ¶ 83(d)(iii)(2). For jointly held accounts, checks will be payable to all members, and will be mailed to the first member listed on the account. *Id.*; *see also* Ex. 4, Tucci Decl. at ¶ 9. The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. Settlement at ¶ 83(d)(iii)(2). Specifically, the Settlement Administrator will use Accurint (a division of Lexis-Nexis) to perform a "skip trace" search to obtain the Class Member's most accurate and current information, at which point the notice will either be re-mailed to the updated address or sent by email. Tucci Decl. at ¶ 10. The Settlement Class Member shall have 180 days to negotiate the check. Settlement at ¶ 83(d)(iii)(2).

Class Member Payments will be distributed *pro rata* based on the Retry NSF Fees charged to each Settlement Class Member. *Id.* at ¶ 83(d)(ii). Specifically, Settlement Class Members shall be paid *pro rata* distributions of the Net Settlement Fund using the following formula: (Net Settlement Fund/Total dollar value of Retry NSF Fees) x (Total dollar amount of Retry NSF Fees charged to that Settlement Class Member, less the dollar amount of any Retry NSF Fee Refunds and reduced by any Uncollected Retry NSF Fees). *Id.*

### C.     Disposition of Residual Funds

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any remaining amounts resulting from uncashed checks shall either be distributed: (a) in a second round of distribution to those Settlement Class Members who are Current Accountholders or who cashed their initial settlement check, if Class Counsel determines that a second distribution is economically reasonable, given the costs of a second distribution (which must be paid out of the Settlement Fund) and the relative amount of such a second distribution; or (b) to an appropriate cy pres recipient agreed to by the Parties and approved by the Court. *Id.* at ¶ 87. If a second distribution is made, any amounts remaining unclaimed six months after the second distribution shall be distributed to an appropriate cy pres recipient agreed to by the parties and approved by the Court. *Id.* In no event does any of the Settlement Fund revert to TD Bank. *Id.* at ¶ 83(d)(iv).

### D.     Settlement Administrator

The Settlement provides that its Administrator will be RG/2 Claims Administration LLC ("RG/2"). Settlement at ¶ 53. Before selecting RG/2, Class Counsel issued a request for proposals to two leading class action settlement notice and administration firms, Epiq and RG/2. Joint Decl. at ¶ 29. Class Counsel then compared bids for any inconsistency in services delivered, then negotiated price with both firms, ultimately choosing the low-cost provider, RG/2. *Id.* RG/2 is a

9

leading class action notice and claims administrator comprised of seasoned class action practitioners and highly credentialed CPAs and forensic accountants. Tucci Decl., Ex. A at 4. RG/2 has administered and distributed more than $1.2 billion in class action settlement proceeds, is well-versed in the legal requirements governing notice and claims administration in class action settlements, and employs best practices to ensure that class members obtain efficient and meaningful notice. Tucci Decl. at ¶¶ 2, 6. RG/2 also agreed to cap notice costs at a specified level. Joint Decl. at ¶ 29.

## III.   Class Notice

Within 30 calendar days of Preliminary Approval, Defendant will provide the Settlement Administrator with the following information, which will be kept strictly confidential between the Administrator and Defendant, for each Class Member: (i) name; (ii) number of Retry NSF Fees per account through the date of Preliminary Approval; (iii) relevant refund and charge-off information through the date of Preliminary Approval; (iv) last known e-mail address; and (v) last known mailing address ("Class Member List"). Settlement at ¶ 75.

Within 60 calendar days of Preliminary Approval, or by the time specified by the Court, the Settlement Administrator shall send the Class notices in the forms attached as Exhibits 1 and 2 to the Settlement, or in such form as is approved by the Court, to the Class Members. *Id.* at ¶ 76. The Settlement Administrator shall send the "email notice," attached to the Settlement as Exhibit 1, to all Class Members for whom the Defendant has provided the Settlement Administrator with an e-mail address. *Id.* The Settlement Administrator shall send the "postcard notice," attached as Exhibit 1 to the Settlement, to all Class Members for whom Defendant does not provide an email address to the Settlement Administrator and to all Class Members to whom the Settlement Administrator sent Exhibit 1 via email but for whom the Settlement Administrator receives notice of an undeliverable email. *Id.* Postcard notice shall be mailed after the Settlement Administrator

updates mailing addresses provided by Defendant with the National Change of Address database and other commercially feasible means. *Id*. The Settlement Administrator shall also maintain a website containing the Complaint, the "long-form notice," attached as Exhibit 2 to the Settlement, Plaintiffs' motion seeking Preliminary Approval, the Preliminary Approval Order, Plaintiffs' motion seeking Final Approval, and the Final Approval Order until at least 90 calendar days after Final Approval. *Id*. The Settlement Administrator shall send the long-form notice by mail to any Class Member who requests a copy. *Id*. A Spanish language translation of the long-form notice shall be available on the Settlement Website and be provided to Settlement Class Members who request it from the Settlement Administrator. *Id.* at ¶ 78.

## IV.    Opt Out Procedures

A Settlement Class Member may opt-out of the Settlement Class at any time prior to the Opt-Out Deadline, which is 120 calendar days after Preliminary Approval (or other date as ordered by the Court), provided the opt-out notice that must be sent to the Settlement Administrator is postmarked no later than the Opt-Out Deadline. *Id*. at ¶¶ 43, 79. If an Account has more than one Account Holder, and if one Account Holder excludes himself or herself from the Settlement Class, then all Account Holders on that Account shall be deemed to have opted out of the Settlement with respect to that Account. *Id*. at ¶ 79.

## V.    Objection Procedures

The Settlement also provides a procedure for Settlement Class Member to object to the Settlement, to the application for attorneys' fees and costs, and/or to the Service Award. *Id*. at ¶ 80. Objections must be submitted no later than the Objection Deadline, as specified in the notice, which is 120 calendar days after Preliminary Approval (or other date as ordered by the Court). *Id*. at ¶¶ 42, 80. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage

prepaid and addressed in accordance with the Settlement's instructions. *Id.* at ¶ 80. If submitted by private courier (*e.g.*, Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label. *Id.*

## VI. Attorneys' Fees, Costs, and Service Awards

Attorneys' fees and costs, as determined and approved by the Court, are to be paid out of the Settlement Fund. *Id.* at ¶ 83(a). Class Counsel shall apply for an award of attorneys' fees of up to 25% of the $41.5 million Value of the Settlement, and reimbursement of reasonable litigation costs, to be approved by the Court. *Id.* Defendant agrees not to oppose an application for attorneys' fees of up to 25% of the Value of the Settlement, but reserves the right to oppose an application for attorneys' fees in excess of that amount. *Id.*

Subject to Court approval, the Class Representatives shall be entitled to receive a Service Award of up to $7,500.00 each for their role as the Class Representatives. *Id.* at ¶ 83(b). The Service Award shall be paid from the Settlement Fund. *Id.*

## VII. Releases

In consideration for the Settlement, Class Members are releasing claims relating to Retry NSF Fees. *Id.* at ¶ 88.

## VIII. Change in Disclosures

After Plaintiffs filed this action, Defendant changed its account agreement with customers to disclose Retry NSF Fees for the first time:

> Please be aware that third parties sometimes re-submit items that we return unpaid. Each re-submission constitutes a separate item. You agree that if any transaction is submitted for payment again after having previously been returned unpaid by us, an Overdraft Fee or Return Item Fee may be assessed each time the transaction is submitted for payment and your available balance is insufficient to pay the item.

Joint Decl., Ex. A at 10. Although this change in disclosures is not a negotiated part of this Settlement, it is almost certainly a result of this litigation. Joint Decl. at ¶ 30.

# ARGUMENT

Rule 23(e) requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e). Rule 23(e)(1)(B), as amended December 1, 2018, directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. Fed. R. Civ. P. 23(e)(1)(B).

In considering approval of a proposed settlement, courts are mindful of the "strong judicial policy in favor of settlements particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). Given this policy, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Moreover, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, No. 15 Civ. 3706, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016) (collecting cases).

Here, the Court should grant preliminary approval because it "will likely be able to" both grant final approval to the Settlement as "fair, reasonable, and adequate" and certify the Settlement Class for purposes of entering judgment after notice and a final approval hearing.

## I. The Court "will likely be able to" approve the Settlement as "fair, reasonable, and adequate" under Rule 23(e)(2).

### A. The legal standard for preliminary approval.

Rule 23(e)(2) sets out the factors a court must consider in determining whether a proposed class action settlement is "fair, reasonable, and adequate." Those factors are, whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As the Advisory Committee's note to the 2018 Rule 23 Amendment explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and subsections (C) and (D) focus on the "substantive" fairness of the settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. These factors are similar to the "procedural" and "substantive" factors the Second Circuit developed prior to the amendment. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (explaining that courts evaluate procedural and substantive fairness of a class settlement). The 2018 amendment, however, recognizes that "[t]he sheer number of factors" considered in various Circuits "can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The 2018 Amendment "therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.*

14

This Court's Individual Practices in Civil Cases further provides factors to consider on preliminary approval:

> Any motion for preliminary approval of a class action settlement must provide sufficient information regarding: (i) the complexity, expense, and likely duration of the litigation; (ii) the litigation risk, including the risks of establishing liability and damages; (iii) the damages class members allegedly suffered; (iv) the range of reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation; and (v) the rationale for any discount from the "best case" damages calculation, so that the Court can make a preliminary finding as to whether the proposed settlement is procedurally and substantively fair pursuant to Federal Rule of Civil Procedure 23(e). *See Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Rule 7(B)(ii), *Individual Practices in Civil Cases* (Jan. 30, 2020), https://bit.ly/3y9Vh3Z.

## II.    The proposed Settlement meets the requirements for preliminary approval.

The proposed Settlement is plainly "fair, reasonable, and adequate" considering the relevant factors, and the Court should grant preliminary approval and direct notice because the Court "will likely be able to" grant final approval after considering those factors.

### A.    The Class Representatives and Class Counsel have adequately represented the Class.

First, the Class Representatives and Class Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel has extensive experience in class action litigation in general and in cases involving the fee practices of financial institutions in particular. Joint Decl. at ¶¶ 32-51. There are few, if any, firms in the nation with the expertise of Class Counsel in class action litigation in the consumer financial services industry. *See id.* at ¶ 32. Here, Class Counsel's combined expertise allowed them to build a novel case that had not been attempted before. *See id.* at ¶ 53. To even be able to identify the alleged inappropriate fees—much less the legal theories that would make them actionable—required unique knowledge and skill. *Id.* Class Counsel leveraged that knowledge and skill to litigate this case and negotiate a favorable settlement for the Settlement Class. *Id.* at ¶ 57. Without their persistence, expertise, and willingness

15

to invest time and money in this matter, the Settlement Class would have been left entirely without recompense. *Id*. at ¶ 55. Class Counsel engaged in extensive written advocacy on the claims, resulting in this Court's denial of TD Bank's motion to dismiss Plaintiffs' novel breach of contract claim. *See id.* at ¶¶ 5-6, 54-56.

At the time the Complaint was filed in 2018, no other state or federal court, anywhere, had denied a motion to dismiss these claims. *Id.* at ¶ 53. At the time of the Court's ruling on the motion to dismiss, no federal court in New York or the Second Circuit had ruled on these claims. *Id.* at ¶ 54. This Court was among the first to do so. *See id.* at ¶¶ 53-54, 56. Since then, at least eight courts across the country have relied on this Court's ruling in denying motions to dismiss these claims. *Id.* at ¶ 56.

Class Counsel aggressively pursued discovery of relevant evidence, obtaining tens of thousands of pages of discovery and access to years of Defendant's banking transaction data for Plaintiffs' expert to analyze damages. *See* Dkts. 62, 68, 69, 74, 77. Class Counsel brought several discovery disputes to the Court's attention, obtained a ruling in Plaintiffs' favor, and was close to obtaining another. Dkts. 62, 69, 71, 77. The results of Class Counsel's efforts, along with their significant experience in account fee class action litigation, culminated in the Settlement for 42-70% of estimated best-case damages at trial after extensive discovery on a novel claim. Joint Decl. at ¶ 57.

Similarly, the Class Representatives timely responded to written discovery requests and produced hundreds of pages of documents. *Id.* at ¶¶ 13-14. Class Representative Perks sat for a full day deposition. *Id.* at ¶ 16. The Class Representatives also timely responded to alleged discovery deficiencies sent by Defendant, which required the Class Representatives to undertake additional time and effort to ensure discovery compliance, including completing additional

document searches and participating in multiple phone calls with Class Counsel. *Id.* at ¶ 14. These efforts culminated in the sending of a detailed discovery letter to Defendant on September 25, 2020, providing further responses and details regarding Class Representatives' responses to Defendant's discovery requests. *Id.* The Class Representatives also reviewed and approved the terms of the Settlement. *Id.* at ¶ 23.

The Class Representatives and Class Counsel "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "[d]iscovery is fairly advanced and the parties certainly have a clear view of the strengths and weaknesses of their cases"); *Millien v. Madison Square Garden Co.*, No. 17-CV-4000 (AJN), 2020 WL 4572678, at *5 (S.D.N.Y. Aug. 7, 2020) (same). Thus, Class Counsel and the Class Representatives have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A).

**B.     The Settlement was negotiated at arm's length.**

Second, the Settlement is the product of hard-fought, arm's-length negotiations under a very experienced and well-respected mediator. *See* Fed. R. Civ. P. 23(e)(2)(B). "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005) (quoting Manual for Complex Litig. (Third) § 30.42 (1995)). Moreover, in such circumstances, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying

litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. Mar. 20, 1997); *see also Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation"). Class Counsel, who have extensive experience litigating and settling account fee litigation across the country, are of the opinion that the Settlement is an outstanding result for the Settlement Class. Joint Decl. at ¶ 25, 57.

Further, the Settlement was reached only after multiple mediation sessions with Professor Eric Green. This Court has recognized that Professor Eric Green is "a highly experienced and very well-regarded mediator," *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *1 (S.D.N.Y. Sept. 9, 2015), as have other courts. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 658 (S.D. Fla. 2011) (noting Professor Green is "an experienced and well-respected mediator"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2015 WL 5918273, at *2 n.3 (E.D.N.Y. Oct. 9, 2015) (same); *Gulbankian v. MW Mfrs., Inc.*, No. CIV.A. 10-10392-RWZ, 2014 WL 7384075, at *1 (D. Mass. Dec. 29, 2014) (same). As the Central District of Illinois observed, Professor Green's "guidance and participation in mediating this matter between the parties, and reviewing their settlement agreement, demonstrates that this matter was negotiated at arm's length and absent any collusion between the parties' counsel to the detriment of the class." *Clapp v. Accordia Life & Annuity Co.*, No. 2:17-cv-02097-CSB-EIL at 26–27 (C.D. Ill. June 23, 2020) (ECF 66). *See also Visa*, 396 F.3d at 117 (agreeing with Professor Green's assessment that the settlement was negotiated at arm's length and was procedurally fair); *Rubio-Delgado v. Aerotek, Inc.*, No. 13-CV-03105-SC, 2015 WL 3623627, at *4 (N.D. Cal. June 10, 2015) (same). *See also* Fed. R. Civ. P. 23(e)(2)(A) & (B)

advisory committee's note to 2018 amendments ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

Although the details of the mediation sessions are confidential, it is Professor Green's opinion that counsel for both sides skillfully and vigorously represented the interests of their clients. Green Decl. at ¶ 11. According to Professor Green, "the level of advocacy for both parties was informed, vigorous, engaged, ethical, and effective"; "[t]he parties' positions on both liability and damages in this and the related cases were extensively briefed prior to the mediation session"; and the parties' "positions on liability and damages, as well as the risks involved in continuing to litigate the cases, were probed and discussed at length during the mediation in both joint and separate sessions." *Id*. Professor Green also acknowledged that "[t]hroughout the process, the parties engaged in extensive adversarial negotiations over virtually every issue in the cases." *Id*. According to Professor Green, "[t]he negotiations were principled, exhaustive, informed, and sometimes difficult and contentious." *Id*.

Therefore, in the opinion of Professor Green, "the outcome of the mediated negotiations is the result of a fair, thorough, and fully-informed arms-length process between highly capable, experienced, and informed parties and counsel." *Id*. at ¶ 12. The Settlement, therefore, was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B).

### C. The relief provided for the Settlement Class is adequate, taking into account the relevant factors.

#### 1. The relief provided by the Settlement is significant.

Third, perhaps the best indicator of the fairness of the Settlement is the significance of the relief it provides—$41.5 million in total value, which represents a recovery of approximately 42-70% of the estimated best-case damages at trial. Joint Decl. at ¶ 57. Assuming Plaintiffs prevailed

at trial on liability (which TD Bank would have vigorously contested), Plaintiffs would have argued for a refund or forgiveness of every improperly assessed fee incurred by the Class, and the $41.5 million recovery represents approximately 42% of that damages figure. *Id.* at ¶ 26. The cash recovery of $20.75 million represents 41% of all Retry NSF Fees assessed and paid by Settlement Class Members; the debt forgiveness of $20.75 million represents 42% of all Retry NSF Fees assessed but not yet paid (still owing) to TD Bank. *Id.* at ¶ 27.

However, TD Bank would have undoubtedly argued that the transactions giving rise to each NSF fee were distinct and separate items and that Settlement Class Members were (or should have been) on notice of the challenged fee practices after incurring their first Retry NSF Fee. Using Defendant's damages model, the $41.5 million recovery represents approximately 70% of the Retry NSF Fees at issue. *Id.* Thus, if the Settlement is approved, Settlement Class Members will recover approximately 42-70% (depending upon the opposing damage models) of their potential damages, without further risks attendant to litigation. *See id.* This significant recovery was obtained on a novel claim after significant discovery, and it is Class counsel's opinion that it is an outstanding result for the Class. *Id.* at ¶¶ 55, 57. The relief provided by the Settlement warrants preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C).

The Second Circuit has recognized that "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Consistent with that principle, courts often approve class settlements even where the benefits represent "only a fraction of the potential recovery." *See, e.g.*, *In re Initial Public Offering Secs. Litig.* ("*In re IPO*"), 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009). In a recent decision, the Second Circuit upheld approval of a settlement that represented 6.1% of the class's maximum potential damages. *In re Patriot Nat'l, Inc. Sec.*

*Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020). And in *In re IPO*, the court approved a settlement that provided only 2% of defendants' maximum possible liability, observing that "the Second Circuit has held that . . . even a fraction of the potential recovery does not render a proposed settlement inadequate." 671 F. Supp. 2d at 484. *See, e.g.*, *In re Prudential Inc. Secs. Ltd. P'ships Litig.*, MDL No. 1005, M-21-67, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6 and 5% of claimed damages); *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving settlement at 3% of estimated damages); *Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 402 (S.D.N.Y. 2009) (same, 5 to 12% of maximum damages); *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (same, 10 to 20%  of damages estimate); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 CIV. 6094 PAE, 2014 WL 4670870, at *7 (S.D.N.Y. Sept. 19, 2014) (same, 20 to 25% of maximum recovery).

In this case, by contrast, the amount of the Settlement is a significant percentage of the potential damages, however measured. In fact, Professor Eric Green's opinion is that the "final settlement represents the parties' and counsels' best professional effort and judgment about a fair, reasonable, and adequate settlement after thoroughly investigating and litigating this and the related cases, taking into account the risks, strengths, and weaknesses of their respective positions on the substantive issues in the cases, the risks and costs of continued litigation, and the best interests of their clients." Green Decl. at ¶ 12.

Brian Fitzpatrick, a Professor specializing in the study of class action litigation at Vanderbilt University, has extensively studied and written about class action settlements and is of the opinion that the Settlement is "several times better than the typical recovery" in class actions for which there is data regarding the recovery rates of class action settlements. Ex. 5, Fitzpatrick

Decl. at ¶ 25. Further, Professor Fitzpatrick served as an expert in numerous class action cases challenging overdraft fee practices consolidated in MDL 2036. *Id*. at ¶ 5 (citing *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.) (twenty-one different settlements)). According to Professor Fitzpatrick, "the recovery here is at the high end of recoveries in the overdraft cases in which [he] ha[s] served as an expert. . . . Rarely was the recovery greater as a percentage of damages than obtained here." *Id*. at ¶ 25 & Table 1.

The significant recovery strongly supports preliminary approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C).

### 2. The costs, risks, and delay of trial and appeal make the relief provided by the Settlement even more valuable.

The amount of the Settlement is even more significant when considered against the substantial costs, risks, and delays of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The relief provided by the Settlement is concrete, guaranteed, and immediate, while the results from continued litigation would be delayed at best and lower in value at worst.

Make no mistake, this was risky litigation from the start. This is a complicated breach of contract case involving bank processing and electronic payment practices, including the dense NACHA rules. TD Bank adamantly denied liability and expressed an intention to defend itself through trial.

At the time the lawsuit was filed, no court in the country had ruled on this novel claim challenging the assessment of Retry NSF Fees. Joint Decl. at ¶ 51. Since this Court's decision, numerous other courts have agreed and relied on this Court's opinion in so ruling; however, others have come to the opposite conclusion and dismissed these claims. *See Page v. Alliant Credit Union*, No. 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020) (dismissing multiple fee claims); *Toth v. Scott Credit Union*, No. 20-CV-00306-SPM, 2021 WL 535549 (S.D. Ill. Feb. 12,

2021) (dismissing in part claims challenging multiple fee practice); *Saunders v. Y-12 Fed. Credit Union*, No. E2020-00046-COA-R3-CV, 2020 WL 6499558 (Tenn. Ct. App. Nov. 5, 2020) (upholding dismissal of multiple fee claims); *Foltz v. Matanuska Valley Valley Fed. Credit Union*, No. 3AN-20-06666CI (Alaska Super Ct. Jan. 12, 2021) (granting motion to dismiss multiple fee claims); *Winamaki v. Umpqua Bank*, No. 19CV52252 (Or. Cir. Ct. Oct. 20, 2020) (same); *Jones v. Washington State Employees' Credit Union*, No. 20-2-06596-5 (Wash. Super. Ct. Nov. 3, 2020) (same); *Marical v. Boeing Employees' Credit Union*, No. 19-2-20417-6 KNT (Wash. Super. Ct. Oct. 31, 2019) (same); *Choy v. Space Coast Credit Union*, No. 94920472 (Fla. Cir. Ct. May 7, 2020) (same); *Haines v. Washington Trust Bank*, No. 20-2-10459-1 SEA (Wash. Super. Ct. Nov. 10, 2020) (same); *see also Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) (same). Indeed, based on Professor Fitzpatrick's research and experience, it is his opinion that "not only is the recovery of nearly half of maximum potential damages better than most bank fee cases, but it is better than the expected value of this lawsuit" and, therefore, "a recovery this strong in light of the risks and circumstances of this litigation is unusual." Fitzpatrick Decl. at ¶ 26.

TD Bank is a sophisticated and well-funded opponent with the resources to delay prosecution of the claims at every potential opportunity, through trial and potentially multiple appeals. There is little doubt that continued litigation would have spanned years and would have been costly to the parties and a tax on judicial resources. There was no guarantee that the Settlement Class would succeed in a contested class certification battle, a battle of the experts, a potential Rule 23(f) appeal of class certification, summary judgment, trial, or appeal of any verdict. The Settlement on the other hand, provides meaningful expedited relief to Settlement Class

Members who are likely unable to bring their own claims against TD Bank, as the claims stem from having bank accounts that did not have sufficient funds to cover an attempted transaction.

Surviving class certification, defeating summary judgment, achieving a litigated verdict at trial, and then sustaining any such verdict in appeals is a prolonged, complex, and risky proposition that would require substantial additional time and expense. *See In re IPO*, 671 F. Supp. 2d at 481 (finding that the complexity, expense, and duration of continued litigation supports approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"). The substantial risk of continued litigation weighs in favor of approving the Settlement because "plaintiffs would have faced significant legal and factual obstacles to proving their case." *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Apart from substantial risk and expenses, courts overwhelmingly recognize that the delay of litigation by itself is a significant consideration in approving a settlement. As the Court explained in *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003), "even if a [plaintiff] or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery." Inevitable litigation delays "not just at the trial stage, but through post-trial motions and the appellate process, would cause Settlement Class Members to wait years for any recovery, further reducing its value." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *Grinnell*, 495 F.2d at 467). *See In re Marsh & McLennan*, *Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (noting the additional expense and uncertainty of "inevitable appeals" and the benefit of Settlement, which "provides

certain and substantial recompense to the Class members now"); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement); *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987) ("[E]ven assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away.").

In contrast to ongoing litigation, "[s]ettlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay." *In re EVCI Career Coll.*, No. 05 Civ. 10240, 2007 WL 2230177, at *6 (S.D.N.Y. July 27, 2007) (internal citations omitted). The prompt and significant recovery obtained here is especially important because Settlement Class Members are, by definition, bank account holders who did not have enough money in their account to pay for checks or electronic payment items, such as their insurance payment. Money in their pockets now will be meaningful.

Further, those Settlement Class Members entitled to debt forgiveness will be provided a greater opportunity to re-enter the banking system. *See* Fitzpatrick Decl. at ¶ 17. When financial institutions like TD Bank charge off an account due to delinquency, they report the consumer to a screening database such as ChexSystems. *Id*. Because financial institutions throughout the country routinely check ChexSystems before determining whether to enter into a banking relationship with consumers, consumers who have been reported to ChexSystems are effectively blacklisted and ejected from the banking system. *Id*. Such unbanked consumers face numerous harms, including significant fees associated with basic financial services such as cashing checks or paying bills, and are often required to resort to payday lenders and other predatory alternatives. *Id*. The Settlement's requirement that TD Bank both forgive Settlement Class Members' uncollected debt and update

any negative reporting to ChexSystems or credit reporting agencies with respect to Settlement Class Members thus provides a meaningful benefit. *Id.* at ¶¶ 17-18.

The $41.5 million recovery readily falls within the range of reasonable results given the complexity of the case and the significant barriers that stand between now and a final, collected judgment. *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair."); Fed. R. Civ. P. 23(e)(2)(C)(i).

### 3. The method of distributing the relief to the Settlement Class is highly effective.

In addition to being substantial in amount, the Settlement also effectively distributes the relief to the Settlement Class Members without the need for them to do anything at all, a factor the Court must review under Fed. R. Civ. P. 23(e)(2)(C)(ii). A plan for allocating settlement proceeds, like the Settlement itself, should be approved if it is fair, reasonable, and adequate. *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012). "Measuring the proposed relief may require evaluation of any proposed claims process." Fed. R. Civ. P. 23(e)(C) advisory committee's note to 2018 amendments.

Here, the Settlement is highly effective in distributing the relief to the Settlement Class Members because the distribution is automatic and does not involve any claims process. Debt forgiveness will be automatically applied by Defendant, current customers will receive money directly deposited to their accounts, and former customers will receive a check mailed directly to their last known address. Thus, unlike other settlements where the ascribed value may be dubious because it depends on a complicated or burdensome claims process, the relief is automatic and it will no doubt reach the Settlement Class Members who deserve it. Indeed, the Settlement even provides for a second round of distribution of any residual funds remaining from uncashed checks.

The Settlement's distribution method is ideal and supports approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 4. Attorneys' fees will be paid only after Court approval and in an amount justified by the Settlement.

Rule 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees, including timing of payment. This Court's Individual Practices in Civil Case requires that Class Counsel "identify all attorneys with whom counsel intends to share the fees, regardless of whether those attorneys have filed Notices of Appearance" and to "provide a fair approximation of the number of hours each attorney has devoted to the case and his or her regular billing rate." Rule 7(B)(i), *Individual Practices in Civil Cases* (Jan. 30, 2020), https://bit.ly/3y9Vh3Z. All law firms with whom counsel intends to share fees are identified in Class Counsel's declaration and all have entered appearances. *See* Dkts. 9-10, 22-24, 39-40. Class Counsel's fair approximation of hours and rates is also in Class Counsel's declaration. Joint Decl. at ¶¶ 37, 42, 47, 52.

The Settlement provides that attorneys' fees will be paid from the Settlement Fund only after a separate application is made, Settlement Class Members have a chance to object, and the Court determines the appropriate amount. Under the Settlement, TD Bank will not object to a fee request of up to 25% of the Value of the Settlement. While an application for fees has yet to be made, the notices will explain that a maximum 25% fee request may be lodged. A 25% fee request would fall squarely within the accepted range of fees awarded in similar account fee cases, Fitzpatrick Decl. at ¶¶ 19, 24, and in cases in the Second Circuit, *id.* at ¶ 23.

A percentage-of the fund fee is appropriate here. As stated by the Second Circuit: "[t]he trend in this Circuit is toward the percentage method which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation[.]" *Visa*, 396 F.3d at 121 (internal citations omitted). *See* Fitzpatrick Decl. at ¶ 13

(same). Indeed, "[t]his is consistent with the line of cases in which the Supreme Court held that in the case of a common fund, the fee awarded should be determined on a percentage-of-recovery basis." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *15 (S.D.N.Y. July 27, 2007) (citing, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)).

By contrast, the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Visa*, 396 F.3d at 121. Thus, the percentage approach remedies this central flaw in lodestar because class counsel's recovery is linked to the benefit recovered for the class. Fitzpatrick Decl. at ¶ 12. It "provides class counsel with the *incentive* to maximize the settlement payout for the class because a larger settlement yields a proportionally larger fee." *Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 71 (2d Cir.), *cert. denied*, 140 S. Ct. 385, 205 L. Ed. 2d 218 (2019) (emphasis added). Thus, the percentage method is the better method for determining appropriate attorneys' fees. Fitzpatrick Decl. at ¶¶ 12-13.

Moreover, the requested percentage is reasonable. "[F]ederal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 235–36 (2d Cir. 2007) (affirming 30% fee award of $42.5 million to counsel); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007

WL 4115808, at *1 (S.D.N.Y. Nov. 7, 2007) (awarding 30%); *Hayes v. Harmony Gold Min. Co.*, No. 08 CIV. 03653 BSJ, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) *aff'd,* 509 F. App'x 21 (2d Cir. 2013) (awarding one-third).

Furthermore, in the calculation of the "overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of both the monetary and non-monetary benefits conferred on the Class." *Fleischer v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *15 (S.D.N.Y. Sept. 9, 2015). Here, the $41.5 million Settlement plus $500,000 in notice and administration costs provides is all properly considered part of the fund. *See, e.g.*, *Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14CV7539MKBCLP, 2020 WL 5995978, at *2 (E.D.N.Y. Apr. 21, 2020), *report and recommendation adopted sub nom.*, 2020 WL 5995650 (E.D.N.Y. Oct. 8, 2020) (awarding percentage of overall value of fund that included debt forgiveness); *Velez*, 2010 WL 4877852, at *4, *18 (awarding fees on total value of fund, including monetary and nonmonetary relief). Indeed, this is how courts routinely approach the total value of the fund in account fee litigation. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. 6:15MN02613 (D.S.C. Jan. 9, 2020) (ECF 233) (including in total value of $70 million settlement $43 million in cash and $27 million in debt forgiveness); *In re: Checking Account Overdraft Litig. (Commerce Bank)*, No. 1:09-MD-02036-JLK, 2013 WL 11319243 (S.D. Fla. Aug. 2, 2013) (including in total value of $23.2 million settlement $18.3 million in cash and a change in posting practice with value of $4.9 million); *In re: Checking Account Overdraft Litig. (JP Morgan Chase Bank)*, No. 09-MD-02036-JLK (S.D. Fla. Dec. 19, 2012) (ECF 3134) (including in $162 million settlement value $110 million in cash and change in overdraft fee policy with an estimated value of $52 million over a two-year period).

Simply put, any request for fees will be supported by law and evidence, and such a request supports preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### 5. There are no side agreements.

Rule 23(e)(2)(C)(iv) requires the Court to consider any side agreements that must be disclosed under Rule 23(e)(3). This is because side agreements can result in inequitable treatment of class members. Fed. R. Civ. P. 23(C) advisory committee's note to 2018 amendments. Here, there are no side agreements to consider, as every term of the Settlement is found in the agreement itself, so there is no cause to doubt the adequacy and fairness of the Settlement.

### 6. The Settlement treats Class Members equitably relative to each other.

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Settlement Class Members equitably relative to one other because the amount a Settlement Class Member receives is based on the amount of Retry NSF Fees that Settlement Class Members was charged. As to individual members, more allegedly unlawful fees equate to more relief and, therefore, an allocation that compensates each Settlement Class Members in proportion to the harm each suffered is equitable. *See Maley*, 186 F. Supp. 2d at 367 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."); *In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strengths and values of different categories of claims.").

### III. The Court will "likely be able to" certify the Settlement Class for purposes of entering judgment on the Settlement.

To determine whether the Court will "likely be able to" certify the Settlement Class for purposes of entering judgment on the Settlement, the Court looks to the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of any subsection of

Rule 23(b), here subsection 23(b)(3) (predominance and superiority). Fed. R. Civ. P. 23. The Second Circuit has emphasized that Rule 23 should be "given liberal rather than restrictive construction." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Indeed, it is "beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361–62 (E.D.N.Y. 2009) (quotation omitted). Numerous courts have found class certification appropriate in the tougher litigation context in account fee cases. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 141, 142 (D.S.C. 2018); *Smith v. Bank of Hawaii*, No. 16-00513-JMS-WRP, 2019 WL 3297301, at *6 (D. Haw. Jan. 30, 2019), *report and recommendation adopted in part, rejected in part,* 2019 WL 2712262 (D. Haw. June 28, 2019); *Gunter v. United Fed. Credit Union*, No. 3:15–cv–00483–MMD–WGC, 2017 WL 4274196, at *5 (D. Nev. Sept. 24, 2017); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 676 (S.D. Fla. 2011).

The proposed Settlement Class meets all of the requirements for certification.

## A.    The Settlement Class meets the requirements of Rule 23(a).

### 1.    The Settlement Class is so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." Numerosity does not require a fixed number of class members but "is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Second Circuit has found this requirement met where a class is "obviously numerous." *Marisol A.*, 126 F.3d at 376.

Here, it is undisputed that there are tens of thousands of members across numerous states. Joint Decl. at ¶ 24. The class is "obviously numerous," and numerosity is satisfied. *See Marisol A.*, 126 F.3d at 376.

## 2.   There are questions of law and fact common to the Settlement Class.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Rule 23(a)(2) is a "low hurdle," *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), and "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality requires only that the proposed class members' claims "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Damages resulting from a "unitary course of conduct" are sufficient to show commonality. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015). "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).

Here, the common question of whether TD Bank's standard agreement permitted it to charge Retry NSF Fees is common to all members of the Settlement Class and is "central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. As in other bank fee class actions in the tougher litigation context, the "low hurdle" of commonality is satisfied. *See In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. at 152–53 (finding that, "the answer to the overarching question of whether [the fees were] permissible" would "resolve large swathes [of] the class members' available-balance-based claims in one fell swoop").

## 3.   The Class Representatives' claims are typical of the claims of the Settlement Class.

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. The commonality and typicality requirements tend to merge, and demonstrating typicality under Rule 23(a)(3) requires only that "each class member's claim arises from the same

course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376. The typicality requirement "is not demanding." *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013). Rather, "the typicality requirement requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Id.* Typicality is therefore satisfied "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Here, the Class Representatives' claims arise from the same course of conduct as the claims of the Settlement Class, namely TD Bank's practice of charging Retry NSF Fees. Like the members of the Settlement Class, the Class Representatives' claims depend on whether TD Bank's standard contract documents permitted assessment of Retry NSF Fees. As in other account fee class actions, typicality is satisfied. *See Gunter*, 2017 WL 4274196, at *6 ("[The plaintiff] need only show that her breach of contract claim is typical of the breach of contract claims that could be brought by members of the proposed class as she defines it, which she has done.").

### 4. The Class Representatives will fairly and adequately protect the interests of the Settlement Class.

Rule 23(a)(4) requires that the class representatives will "fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Adequacy turns on "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct

the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotations omitted).

The first requirement is satisfied by showing that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class members. *Charron*, 731 F.3d at 249. Here, the Class Representatives share the same interests as the Settlement Class in seeking a recovery for Retry NSF Fees charged by TD Bank, because they were all damaged by the same conduct of TD Bank, and the Class Representatives have no interests antagonistic to the Settlement Class. With respect to the second requirement, proposed Class Counsel are highly qualified and experienced in consumer class actions generally and account fee litigation specifically and have worked diligently to prosecute this case to a settlement. *See* Joint Decl. at ¶¶ 31-55, 58.

**B.      The Settlement Class meets the requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Here, like in several other account fee cases in the litigation context, these requirements are met because the predominant issue in the litigation is whether Defendant's standard fee practice violated its standard form agreement. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136 at 155 (because liability turned "legal and factual issues that are the same for all Plaintiffs and class members" predominance was met); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 676 (finding predominance met where, "[a]ny analysis of [the bank's alleged overdraft fee] scheme will depend on evidence relating to

34

the standardized form account agreement and bank practices affecting all class members in a uniform manner").

       **1.**      **Common questions of law and fact predominate over any questions affecting only individual members of the Settlement Class.**

"Class-wide issues predominate if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, like in other account fee litigation where courts have found predominance, the common issue of whether TD Bank's Retry NSF Fee assessment practices violate its Agreement or are otherwise unlawful will "depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 676. And the answer to that question drives the resolution of the matter for the Settlement Class as well as for TD Bank, and any other issues are ancillary.

       **2.**      **The Settlement Class is superior to other methods for the fair and efficient adjudication of the controversy.**

Resolving this litigation through the Settlement Class is plainly superior to litigation by individual Settlement Class Members. Most Settlement Class Members lack the financial resources to prosecute individual actions, and the value of any individual claim is simply too low to justify individual cases. *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 294 (S.D.N.Y. 2012) ("[T]he class members' interests in litigating separate actions is likely minimal given their potentially limited means with which to do so and the prospect of relatively small recovery in individual actions"). This is especially true here against a well-funded defendant like TD Bank.

"Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531(FM), 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014). Thus, the Settlement Class is the superior method of adjudicating this action.

For all the reasons discussed *supra*, the Settlement Class meets all of the requirements for certification and the Court "will likely be able to" certify it for purposes of entering judgment on the Settlement.

## IV.   The Court should approve the forms of notice and direct notice to be sent to the Settlement Class.

Once the Court has determined that preliminary approval is appropriate, it must direct notice to the proposed class that would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113 (citations omitted). The Court is given broad power over which procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness that the Constitution's due process guarantees impose. *See Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members."). "When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (summary order) (quoting Fed. R. Civ. P. 23(c)(2)(B), (e)(1)). The notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the proposed forms of notice, attached as Exhibits 1-2 to the Settlement Agreement, and plans for disseminating the notice by direct email and direct mail, and establishing a settlement website with a long-form notice constitute the best notice practicable. The forms of notice are written in plain language in a format prescribed by the Federal Judicial Center, and they provide the required information. And notice is being directly emailed or mailed to Settlement Class Members.

**V.     The Court should schedule a final approval hearing.**

The last step in the Settlement approval process is a final approval hearing at which the Court will make its final evaluation of the Settlement. Plaintiffs and Class Counsel request that the Court schedule the final approval hearing 180 days after entry of the Preliminary Approval Order.

**CONCLUSION**

The Settlement achieves an outstanding result in novel litigation that advanced the law and directly and promptly puts real money in Settlement Class Members' pockets and forgives debt without any claims process. It was achieved after the Court's ruling on the motion to dismiss, significant discovery and depositions, and two hard-fought mediations that were presided over by a preeminent mediator. This Court should grant preliminary approval to the Settlement.

Dated: May 17, 2021                                              Respectfully submitted,

                                                                 */s/ Lynn Toops*
Jeff Ostrow (admitted pro hac vice)                              Richard E. Shevitz (admitted pro hac vice)
Jonathan M. Streisfeld (admitted pro hac vice)                  Lynn A. Toops (admitted pro hac vice)
**KOPELOWITZ OSTROW P.A.**                                       Vess A. Miller (admitted pro hac vice)
One W. Las Olas Blvd., Suite 500                                 **COHEN & MALAD, LLP**

37

Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey D. Kaliel (admitted pro hac vice)
Sophia Gold (admitted pro hac vice)
**KALIEL GOLD PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
rshevitz@cohenandmalad.com
ltoops@cohenandmalad.com
vmiller@cohenandmalad.com

James J. Bilsborrow
**SEEGER WEISS, LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
(212) 584-0755
jbilsborrow@seegerweiss.com

*Attorneys for Plaintiffs and the proposed Settlement Class*

## CERTIFICATE OF SERVICE

I certify that on May 17, 2021, a true and accurate copy of the foregoing memorandum was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Lynn A. Toops*