**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARY JENNIFER PERKS, MARIA NAVARRO-REYES, on behalf of themselves and all others similarly situated, | CASE NO. 1:18-CV-11176-VEC |
| Plaintiffs, | |
| v. | |
| TD BANK, N.A., | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS SETTLEMENT**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................... iii

Introduction ............................................................................................................................... 1

Facts .......................................................................................................................................... 1

I.      Summary of the litigation and settlement benefits. ...................................................... 1

II.     Notice to Class Members and to 55 attorneys general. ................................................. 3

III.    No Class Members object to the Settlement. ................................................................. 4

Argument ................................................................................................................................... 5

I.      The legal standard for final approval. ........................................................................... 5

II.     The Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). ...................... 7

        A.      The Class Representatives and Class Counsel have adequately represented the
                Class. ................................................................................................................... 7

        B.      The Settlement was negotiated at arm's length. .................................................... 8

        C.      The relief provided for the Settlement Class is adequate, taking into account
                the relevant factors. ............................................................................................ 10

                1.      The relief provided by the Settlement is significant. ................................. 10

                2.      The costs, risks, and delay of trial and appeal make the relief provided
                        by the Settlement even more valuable. ..................................................... 12

                3.      The method of distributing the relief to the Settlement Class is highly
                        effective ................................................................................................... 15

                4.      Attorneys' fees will be paid only after Court approval and in an
                        amount justified by the Settlement, and no Class Member objects to
                        the requested fees. .................................................................................... 15

                5.      There are no side agreements. ................................................................... 18

                6.      The Settlement treats Class Members equitably relative to each other. ..... 19

        D.      The reaction of the Class Members and regulators strongly supports approval. ... 19

III.    The Settlement Class meets the requirements for class certification for purposes of
        entering judgment on the Settlement. .......................................................................... 20

        A.      The Settlement Class meets the requirements of Rule 23(a). .............................. 20

                1.      The Settlement Class is so numerous that joinder of all members is
                        impracticable. ........................................................................................... 20

                2.      There are questions of law and fact common to the Settlement Class. ....... 21

        3.      The Class Representatives' claims are typical of the claims of the Settlement Class. ........................................................................................21

        4.      The Class Representatives will fairly and adequately protect the interests of the Settlement Class. .............................................................22

   B.     The Settlement Class meets the requirements of Rule 23(b)(3). ......................... 23

        1.      Common questions of law and fact predominate over any questions affecting only individual members of the Settlement Class. ....................23

        2.      The Settlement Class is superior to other methods for the fair and efficient adjudication of the controversy. ...................................................24

Conclusion ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................... 22, 23

*Anderson v. Merit Energy Co.*,
No. 07–cv–00916–LTB–BNB, 2009 WL 3378526 (D. Colo. Oct. 20, 2009)........................ 18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) .................................................................................................. 16

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) .......................................................................................... 6, 23

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated on other grounds by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) .................................................................................................. 11

*Clapp v. Accordia Life & Annuity Co.*,
No. 2:17-cv-02097-CSB-EIL (C.D. Ill. June 23, 2020) (ECF 66) ........................................... 9

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .................................................................................................. 20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) .................................................................................................. 22

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
No. 114CV02081DADBAM, 2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ........................ 18

*Fleischer v. Phoenix Life Ins. Co.*,
Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...... 9

*Fogarazzo v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................................... 22

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ......................................................................................... 21

*Gortat v. Capala Bros.*,
257 F.R.D. 353 (E.D.N.Y. 2009) ......................................................................................... 20

*Gunter v. United Fed. Credit Union*,
No. 3:15–cv–00483–MMD–WGC, 2017 WL 4274196 (D. Nev. Sept. 24, 2017)............. 20, 22

*Hadel v. Gaucho, LLC*,
  No. 15 Civ. 3706, 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ............................................ 5

*Hayes v. Harmony Gold Min. Co.*,
  No. 08 CIV. 03653 BSJ, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)
  *aff'd,* 509 F. App'x 21 (2d Cir. 2013).................................................................................... 17

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-MD-1775 JG VVP, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ................................. 9

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................................... 19

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................... 8

*In re Checking Acct. Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011)............................................................................................... 9

*In re Checking Acct. Overdraft Litig.*,
  275 F.R.D. 666 (S.D. Fla. 2011)............................................................................................. 20

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
  333 F.R.D. 364 (E.D. Pa. 2019).............................................................................................. 18

*In re EVCI Career Coll.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................... 14

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................. 5

*In re Fab Universal S'holder Derivative Litig.*,
  148 F. Supp. 3d 277 (S.D.N.Y. 2015) .................................................................................... 17

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................ 14

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................ 15

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) .............................................................................. 11, 13

*In re Michael Milken & Assoc. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y.1993) .............................................................................................. 19

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. Mar. 20, 1997) .............................................................................. 8

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 F. App'x 760 (2d Cir. 2020) ................................................................... 11

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
   325 F.R.D. 136 (D.S.C. 2018) ................................................... 20, 21, 23

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
   No. 6:15MN02613 (D.S.C. Jan. 9, 2020) (ECF 233) ............................ 17

*In re Telik Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................... 19

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)................................... 16

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ............................................................ 8

*In re: Checking Account Overdraft Litig. (Commerce Bank)*,
   No. 1:09-MD-02036-JLK, 2013 WL 11319243 (S.D. Fla. Aug. 2, 2013) ............................ 17

*In re: Checking Account Overdraft Litig. (JP Morgan Chase Bank)*,
   No. 09-MD-02036-JLK (S.D. Fla. Dec. 19, 2012) (ECF 3134) ............................ 17

*In re: Checking Account Overdraft Litigation*,
   MDL No. 2036 (S.D. Fla.) ......................................................................... 12

*Lambert v. Navy Fed. Credit Union*,
   No. 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019)............................ 12

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................. 14, 19

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ...................................................................... 20

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................. 23

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ...................................................................... 5

*Moore v. Med. Fin. Servs., Inc.*,
   No. 220CV02443MSNCGC, 2021 WL 6333304 (W.D. Tenn. Nov. 30, 2021) ..................... 18

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) .................................................................... 23

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................... 8

*Nobles v. MBNA Corp.*,
   No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ..................................... 14

*Page v. Alliant Credit Union*,
   No. 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020) ............................................. 13

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................... 22

*Smith v. Bank of Hawaii*,
   No. 16-00513-JMS-WRP, 2019 WL 3297301 (D. Haw. Jan. 30, 2019),
   *report and recommendation adopted in part, rejected in part,* 2019 WL 2712262 (D. Haw.
   June 28, 2019) ................................................................... 20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................... 14

*Sykes v. Mel Harris & Assocs. LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012) ................................................................... 24

*Toth v. Scott Credit Union*,
   No. 20-CV-00306-SPM, 2021 WL 535549 (S.D. Ill. Feb. 12, 2021) ..................................... 13

*Velez v. Novartis Pharm. Corp.*,
   No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* ("*Visa*"), 396 F.3d 96 (2d Cir. 2005) ........................... 5

*Weathers v. Sprint Commc'ns Co. L.P.*,
   No. CIV-11-1475-W, 2012 WL 13020701 (W.D. Okla. Nov. 28, 2012) ............................... 18

*Zeltser v. Merrill Lynch & Co.*,
   No. 13 Civ. 1531(FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................... 24

**Other Authorities**

Manual for Complex Litig. (Third) (1995) ................................................................... 8

## INTRODUCTION

The Class Members' and regulators' unanimous, positive response to the proposed $41.5 million settlement of this case (the "Settlement") resoundingly affirms that the Settlement is an excellent outcome for the Class Members. **Out of 1,098,999 Class Members, not a single Class Member objects to the Settlement**, and only two people chose to be excluded. Ex. 1, Declaration of Melissa Baldwin Regarding Notice to the Class ("Notice Decl.") ¶¶ 7, 12–13. At the Court's direction, the notice provided the Class Members with a detailed example of what Class Members could expect to receive from the Settlement after deduction of all requested fees and expenses, so Class Members were fully informed of the Settlement terms and the benefits they could expect to receive. *Id.* at Ex. C. And the Settlement Administrator states that the notice campaign was overwhelmingly successful, with 99.32% of the Settlement Class receiving direct notice. *Id.* ¶ 11. Further, out of the 55 United States, State, and Territory Attorneys General that received notice of the Settlement under the Class Action Fairness Act, none objects to the Settlement.

In no uncertain terms, the response of Class Members and regulators confirms and reinforces this Court's initial determination that the Settlement is undeniably a "fair, reasonable, and adequate" compromise and that the Court should now grant final approval.

## FACTS

### I.    Summary of the litigation and settlement benefits.

The details of the history of this case, the efforts expended by Class Counsel and the Class Representatives, and the benefits of the Settlement are set forth in detail in: (1) the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan, ECF No. 95; (2) the Memorandum in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards, ECF No. 109; and (3) the declarations and exhibits supporting those filings. The

Court previously considered these matters at preliminary approval, so Plaintiffs will not repeat them here. However, in considering final approval a few points warrant re-emphasizing.

First, this case was one of the first in the country challenging the banking practice of charging an insufficient funds fee ("NSF Fee") on an item that had previously been returned for insufficient funds (and had an NSF Fee assessed) but was later resubmitted by the merchant for payment ("Retry NSF Fees"). When filed two and a half years ago, Plaintiffs' Complaint sought recovery under a novel theory of liability that had never been endorsed by a court.

Second, despite the novelty of the case, Plaintiffs expended significant litigation resources to ultimately achieve, after multiple mediations and months of negotiations, a Settlement that includes $41.5 million in direct monetary benefits to Class Members and payment of $500,000 in notice and administration expenses. This represents a recovery of between 42–70% of the estimated damages at trial. In addition, after Plaintiffs filed this lawsuit, Defendant improved its account agreements to disclose the Retry NSF Fee practice for the first time. Further, the Settlement contains "hidden" benefits that save the Settlement Fund and Class Members hundreds of thousands of dollars in expenses.

Third, in addition to the monetary recovery, the Settlement is an exemplar of class action settlement best practices. Benefits will be placed directly in the hands of Class Members without the requirement of a claim form or any action on their part. Credits will be automatically deposited by Defendant to current customers' bank accounts, former customers will be mailed checks, and debt forgiveness will be automatically applied. Not one penny will revert to Defendant.

Considering these factors, on September 7, 2021, the Court granted preliminary approval to the Settlement finding it to be, on a preliminary basis, a "fair, reasonable, and adequate"

compromise that warranted providing notice to the Class and proceeding to a final approval hearing. ECF No. 103.

## II.    Notice to Class Members and to 55 attorneys general.

On May 27, 2021, the Settlement Administrator sent the Court-approved notice to the United States Attorney General and 54 State and Territory Attorneys General. Notice Decl. ¶ 3 & Ex. A. None of the 55 Attorneys General objects to the Settlement. *Id.* ¶ 3.

In response to requests from the Court to make the notice to the Class Members as informative and easy to understand as possible, the parties amended the notice originally proposed in the Settlement. ECF No. 100-1. The revised notice included the amount to be paid in cash, the amount of debt forgiveness, the amount to be paid in administration costs by Defendant, the estimated total amount of administration costs, the amount of requested fees, expenses, and service awards, and an example explaining how much a Class Member should expect to receive as a payment under the Settlement, after deduction of all fees, expenses, and awards. *Id.* ¶¶ 9–12. The Court approved the notice. ECF No. 103.

As the parties worked to implement notice, they determined that a limited subset of data required additional collection and analysis to ensure a complete Class list. ECF No. 104. This additional work resulted in an increase to the costs of administration. *Id.* The parties also determined that a lower proportion of Class Members maintain a valid email address for notice delivery than anticipated at preliminary approval. *Id.* The parties proposed an update to the notice to reflect the new costs of notice and administration to be $795,000, and the Court approved the notice update. ECF No. 105.

The Settlement Administrator created a settlement website with the URL www.RetryNSFFeesSettlement.com that went live on January 13, 2022 and contains the following: (a) a "Homepage" that contains a summary of the Settlement and advises potential

Settlement Class Members of their rights under the Settlement; (b) a "Notice" page that contains pdf copies of the Long Form Notice and the Short Form Notice, both available in English and Spanish; (c) a "Court Documents" page that contains various documents filed with the Court for this Settlement, such as the Settlement Agreement and Amended Complaint; (d) a "Contact" page that contains the contact information of the Claims Administrator and Class Counsel; and (e) a portal to allow Settlement Class Members to submit address changes. Notice Decl. ¶ 5.

On January 14, 2022, Class Counsel filed a motion for approval of attorneys' fees, expenses, and service awards, along with a supporting memorandum and exhibits, which were posted on the settlement website "Court Documents" page. *Id.* At the request of the Court, on February 8, 2022, Class Counsel re-filed the motion and filed the supporting documents separately so that each received its own document number. ECF Nos. 108–12.

On January 15, 2022, the Settlement Administrator sent notice to the Class Members by mail and e-mail. Notice Decl. ¶¶ 5–10. The Settlement Administrator processed returned notices using forwarding addresses and skip-tracing procedures. *Id.* ¶ 11. The Settlement Administrator estimates that direct notice reached 99.32% of the Settlement Class. *Id.* The notice informed Class Members of the right to object or opt out by no later than March 16, 2022. *Id.* ¶¶ 12–13.

## III.    No Class Members object to the Settlement.

Of the 1,098,999 members of the Settlement Class, approximately 99.32% of whom received direct notice of the Settlement, not a single Class Member filed an objection. Notice Decl. ¶ 13. Only two people excluded themselves. *Id.* ¶ 12. Many Class Members asked questions about the settlement or expressed their approval of the settlement by contacting Class Counsel and by visiting the settlement website and calling the settlement toll free number. *Id.* ¶¶ 5–6.

## ARGUMENT

Rule 23(e) requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e). Rule 23(e)(2), as amended December 1, 2018, directs a court to grant final settlement approval upon finding that the proposed settlement is "fair, reasonable, and adequate" and that the Court can certify the settlement class for purposes of entering judgment on the settlement.

In considering approval of a proposed settlement, courts are mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005)). Given this policy, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Moreover, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, No. 15 Civ. 3706, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016).

The Court already found at preliminary approval that it "will likely be able to" grant final approval to the Settlement as "fair, reasonable, and adequate" and certify the Settlement Class for purposes of entering judgment. The only developments since that initial finding are that no Class Member or regulator objects to the Settlement. Therefore, the Court should now make its preliminary findings final and grant final approval by entering judgment on the Settlement.

## I.    The legal standard for final approval.

Rule 23(e)(2) sets out the factors a court must consider in determining whether a proposed class action settlement is "fair, reasonable, and adequate." Those factors are whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As the Advisory Committee's note to the 2018 Rule 23 Amendment explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and subsections (C) and (D) focus on the "substantive" fairness of a settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. These factors are like the "procedural" and "substantive" factors the Second Circuit previously developed. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). The 2018 amendment, however, recognizes that "[t]he sheer number of factors" considered in various Circuits "can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The 2018 Amendment "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.*

**II.    The Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2).**

    **A.    The Class Representatives and Class Counsel have adequately represented the Class.**

First, the Class Representatives and Class Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel has extensive experience in class action litigation in general and in cases involving the fee practices of financial institutions in particular. ECF No. 95-2 ("Joint Decl.") ¶¶ 32–51. Class Counsel's combined expertise allowed them to build a novel case that had not been attempted before. *See id*. ¶ 53. Class Counsel leveraged their knowledge and skill to litigate this case and negotiate a favorable settlement for the Settlement Class. *Id.* ¶ 57. Without Class Counsel's persistence, expertise, and willingness to invest time and money in this matter, the Settlement Class would have been left entirely without recompense. *Id.* ¶ 55.

Class Counsel engaged in extensive written advocacy on the claims, resulting in this Court's denial of TD Bank's motion to dismiss Plaintiffs' novel breach of contract claim. *See id.* ¶¶ 5–6, 54–56. Class Counsel also aggressively pursued discovery of relevant evidence, obtaining tens of thousands of pages of discovery and access to years of Defendant's banking transaction data for Plaintiffs' expert to analyze damages. *See* ECF Nos. 62, 68, 69, 74, 77. Class Counsel brought several discovery disputes to the Court's attention, obtained a ruling in Plaintiffs' favor, and was close to obtaining another. ECF Nos. 62, 69, 71, 77. The results of Class Counsel's efforts, along with their significant experience in account fee class action litigation, culminated in the Settlement for 42–70% of estimated best-case damages at trial. Joint Decl. ¶ 57.

Similarly, the Class Representatives timely responded to written discovery requests and produced hundreds of pages of documents. *Id.* ¶¶ 13–14. Class Representative Perks sat for a full day deposition. *Id.* ¶ 16. The Class Representatives also timely responded to alleged discovery

deficiencies sent by Defendant, which required the Class Representatives to undertake additional time and effort to ensure discovery compliance, including completing additional document searches and participating in multiple phone calls with Class Counsel. *Id.* ¶ 14. The Class Representatives also reviewed and approved the terms of the Settlement. *Id.* ¶ 23.

The Class Representatives and Class Counsel "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "[d]iscovery is fairly advanced and the parties certainly have a clear view of the strengths and weaknesses of their cases"). Thus, Class Counsel and the Class Representatives have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A).

**B.      The Settlement was negotiated at arm's length.**

The Settlement is the product of hard-fought, arm's-length negotiations under an experienced and well-respected mediator. *See* Fed. R. Civ. P. 23(e)(2)(B). "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Visa*, 396 F.3d at 116 (quoting Manual for Complex Litig. (Third) § 30.42 (1995)). In such circumstances, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. Mar. 20, 1997). Class Counsel, who have experience litigating and settling account fee litigation across the country, are of the opinion that the Settlement is an outstanding result for the Settlement Class. Joint Decl. ¶ 25, 57.

Further, the Settlement was reached only after multiple mediation sessions with Professor Eric Green. This Court has recognized that Professor Green is "a highly experienced and very well-regarded mediator," *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *1 (S.D.N.Y. Sept. 9, 2015), as have other courts, *see, e.g.*, *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 658 (S.D. Fla. 2011) (noting Professor Green is "an experienced and well-respected mediator"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2015 WL 5918273, at *2 n.3 (E.D.N.Y. Oct. 9, 2015) (same). As the Central District of Illinois observed, Professor Green's "guidance and participation in mediating this matter between the parties, and reviewing their settlement agreement, demonstrates that this matter was negotiated at arm's length and absent any collusion between the parties' counsel to the detriment of the class." *Clapp v. Accordia Life & Annuity Co.*, No. 2:17-cv-02097-CSB-EIL at 26–27 (C.D. Ill. June 23, 2020) (ECF 66). *See also* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note to 2018 amendments ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

It is Professor Green's opinion that counsel for both sides skillfully and vigorously represented the interests of their clients. ECF No. 95-3 ("Green Decl.") ¶ 11. According to Professor Green, "the level of advocacy for both parties was informed, vigorous, engaged, ethical, and effective"; "[t]he parties' positions on both liability and damages in this and the related cases were extensively briefed prior to the mediation session"; and the parties' "positions on liability and damages, as well as the risks involved in continuing to litigate the cases, were probed and discussed at length during the mediation in both joint and separate sessions." *Id.* Professor Green also acknowledged that "[t]hroughout the process, the parties engaged in extensive adversarial

negotiations over virtually every issue in the cases." *Id*. According to Professor Green, "[t]he negotiations were principled, exhaustive, informed, and sometimes difficult and contentious." *Id*.

Therefore, in the opinion of Professor Green, "the outcome of the mediated negotiations is the result of a fair, thorough, and fully-informed arms-length process between highly capable, experienced, and informed parties and counsel." *Id*. at ¶ 12. The Settlement, therefore, was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B).

C.    **The relief provided for the Settlement Class is adequate, taking into account the relevant factors.**

1.    **The relief provided by the Settlement is significant.**

Third, perhaps the best indicator of the fairness of the Settlement is the significance of the relief it provides—$41.5 million in direct monetary benefits, $500,000 in notice and administration costs, and hundreds of thousands of dollars in "hidden" Settlement benefits. This relief represents a recovery of at least 42-70% of the estimated best-case damages at trial. Joint Decl. ¶ 57. Assuming Plaintiffs prevailed at trial on liability (which TD Bank would have vigorously contested), Plaintiffs would have argued for a refund or forgiveness of every improperly assessed fee incurred by the Class, and the $41.5 million recovery represents approximately 42% of that damages figure. *Id*. ¶ 26. The cash recovery of $20.75 million represents 41% of all Retry NSF Fees assessed and paid by Settlement Class Members; the debt forgiveness of $20.75 million represents 42% of all Retry NSF Fees assessed but uncollected by TD Bank. *Id*. ¶ 27.

However, TD Bank would have undoubtedly argued that the transactions giving rise to each NSF fee were separate items and that Settlement Class Members were (or should have been) on notice of the challenged fee practices after incurring their first Retry NSF Fee. Using Defendant's damages model, the $41.5 million recovery represents approximately 70% of the Retry NSF Fees at issue. *Id*. Thus, if the Settlement is approved, Settlement Class Members will

recover approximately 42–70% of their potential damages (depending upon the opposing damage models), without even considering the other benefits of the Settlement. *See id.* It is Class counsel's opinion that it is an outstanding result for the Class. *Id.* ¶¶ 55, 57. The relief provided by the Settlement warrants final approval. *See* Fed. R. Civ. P. 23(e)(2)(C).

The Second Circuit has recognized that "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Consistent with that principle, courts often approve class settlements even where the benefits represent "only a fraction of the potential recovery." *See In re Initial Pub. Offering Sec. Litig.* ("*In re IPO*"), 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009). In a recent decision, the Second Circuit upheld approval of a settlement that represented 6.1% of the class's maximum potential damages. *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020). And in *In re IPO*, the court approved a settlement that provided only 2% of defendants' maximum possible liability, observing that "the Second Circuit has held that . . . even a fraction of the potential recovery does not render a proposed settlement inadequate." 671 F. Supp. 2d at 484.

Here, the amount of the Settlement is a significant percentage of the potential damages. Professor Green's opinion is that the "final settlement represents the parties' and counsels' best professional effort and judgment about a fair, reasonable, and adequate settlement after thoroughly investigating and litigating this and the related cases, taking into account the risks, strengths, and weaknesses of their respective positions on the substantive issues in the cases, the risks and costs of continued litigation, and the best interests of their clients." Green Decl. ¶ 12.

Brian Fitzpatrick, a professor who studies class action litigation at Vanderbilt University, is of the opinion that the Settlement is "several times better than the typical recovery" in class actions for which there is data regarding the recovery rates of class action settlements. ECF No. 95-5 ("Fitzpatrick Decl.") ¶ 25. Further, Professor Fitzpatrick served as an expert in numerous class action cases challenging overdraft fee practices consolidated in MDL 2036. *Id*. ¶ 5 (citing *In re: Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla.) (twenty-one different settlements)). According to Professor Fitzpatrick, "the recovery here is at the high end of recoveries in the overdraft cases in which [he] ha[s] served as an expert. . . . Rarely was the recovery greater as a percentage of damages than obtained here." *Id*. ¶ 25 & Table 1.

The recovery strongly supports approval of the Settlement. Fed. R. Civ. P. 23(e)(2)(C).

        **2.**        **The costs, risks, and delay of trial and appeal make the relief provided by the Settlement even more valuable.**

The amount of the Settlement is even more significant when considered against the substantial costs, risks, and delays of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The relief provided by the Settlement is concrete, guaranteed, and immediate, while the results from continued litigation would be delayed at best and lower in value at worst.

Make no mistake, this was risky litigation from the start. This is a complicated breach of contract case involving bank processing and electronic payment practices, including the dense NACHA rules. TD Bank adamantly denied liability and expressed an intention to defend itself through trial. At the time the lawsuit was filed, no court in the country had ruled on this novel claim challenging the assessment of Retry NSF Fees. Joint Decl. at ¶ 51. Since this Court's decision, other courts have dismissed these claims. *See, e.g., Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) (dismissing multiple fee claims); *Page v. Alliant Credit Union*, No. 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26,

2020) (same); *Toth v. Scott Credit Union*, No. 20-CV-00306-SPM, 2021 WL 535549 (S.D. Ill. Feb. 12, 2021) (same), *reconsideration denied*, No. 19-CV-5965, 2021 WL 1546437 (N.D. Ill. Apr. 20, 2021); *Ross v. NavyArmy Cmty. Credit Union*, No. 2:21-cv-168, 2022 WL 100110 (S.D. Tex. Jan. 11, 2022) (same). Indeed, it is Professor Fitzpatrick's opinion that "not only is the recovery of nearly half of maximum potential damages better than most bank fee cases, but it is better than the expected value of this lawsuit" and, therefore, "a recovery this strong in light of the risks and circumstances of this litigation is unusual." Fitzpatrick Decl. ¶ 26.

TD Bank is a sophisticated and well-funded opponent with the resources to delay prosecution of the claims at every potential opportunity, through trial and potentially multiple appeals. There is little doubt that continued litigation would have spanned years and would have been costly to the parties and a tax on judicial resources. There was no guarantee that the Settlement Class would succeed in a contested class certification battle, a battle of the experts, a potential Rule 23(f) appeal of class certification, summary judgment, trial, or appeal of any verdict. The Settlement on the other hand, provides meaningful expedited relief to Settlement Class Members who are likely unable to bring their own claims against TD Bank, as the claims stem from having bank accounts that did not have sufficient funds to cover an attempted transaction.

Surviving class certification, defeating summary judgment, achieving a verdict at trial, and sustaining any such verdict in appeals is a prolonged, complex, and risky proposition that would require substantial time and expense. *See In re IPO*, 671 F. Supp. 2d at 481 (finding that the complexity, expense, and duration of continued litigation supports approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"). The substantial risk of continued litigation weighs in favor of approving the

Settlement because "plaintiffs would have faced significant legal and factual obstacles to proving their case." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Apart from risk and expenses, courts overwhelmingly recognize that the delay of litigation itself is a significant consideration in approving a settlement. As the Court explained in *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003), "even if a [plaintiff] or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery." Inevitable litigation delays "not just at the trial stage, but through post-trial motions and the appellate process, would cause Settlement Class Members to wait years for any recovery, further reducing its value." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).

In contrast to ongoing litigation, "[s]ettlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay." *In re EVCI Career Coll.*, No. 05 Civ. 10240, 2007 WL 2230177, at *6 (S.D.N.Y. July 27, 2007) (internal citations omitted). The recovery obtained here is especially important because Settlement Class Members are, by definition, bank account holders who did not have enough money in their account to pay for checks or electronic payment items, such as their insurance payment. Money in their pockets now, or debt forgiveness now, will be meaningful.

The $41.5 million recovery readily falls within the range of reasonable results given the complexity of the case and the significant barriers that stand between now and a final, collected judgment. *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair."); Fed. R. Civ. P. 23(e)(2)(C)(i).

14

### 3.   The method of distributing the relief to the Settlement Class is highly effective.

The Settlement also distributes the relief to the Settlement Class Members without the need for them to do anything at all, a factor the Court must review under Fed. R. Civ. P. 23(e)(2)(C)(ii). A plan for allocating settlement proceeds, like the Settlement itself, should be approved if it is fair, reasonable, and adequate. *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012). "Measuring the proposed relief may require evaluation of any proposed claims process." Fed. R. Civ. P. 23(e)(C) advisory committee's note to 2018 amendments.

The Settlement is highly effective in distributing the relief to the Settlement Class Members because the distribution is automatic and does not involve any claims process. Debt forgiveness will be automatically applied by Defendant, current customers will receive money directly deposited to their accounts, and former customers will receive a check mailed directly to their last known address. Thus, unlike other settlements where the ascribed value may be dubious because it depends on a complicated or burdensome claims process, the relief is automatic, and it will no doubt reach the Settlement Class Members who deserve it. Indeed, the Settlement even provides for a second round of distribution of any residual funds remaining from uncashed checks. The Settlement's distribution method is ideal and supports approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 4.   Attorneys' fees will be paid only after Court approval and in an amount justified by the Settlement, and no Class Member objects to the requested fees.

Rule 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees, including timing of payment. This Court's Individual Practices in Civil Case requires that Class Counsel "identify all attorneys with whom counsel intends to share the fees, regardless of whether those attorneys have filed Notices of Appearance" and to "provide a fair approximation of the number of hours each attorney has devoted to the case and his or her regular billing rate." Rule

7(B)(i), *Individual Practices in Civil Cases* (Jan. 30, 2020), https://bit.ly/3y9Vh3Z. All law firms with whom counsel intends to share fees are identified in Class Counsel's declaration and all have entered appearances. *See* ECF Nos. 9–10, 22–24, 39–40. Class Counsel's fair approximation of hours and rates is in the separate Joint Declaration relating to fees. ECF No. 107-2 ¶¶ 18–20.

The Defendant does not object to the requested 25% of the Value of the Settlement, and, more importantly, after notice, not a single Class Member or regulator objects to the requested fee. Notice Decl. ¶ 13. A 25% fee request falls squarely within the accepted range of fees awarded in similar account fee cases, Fitzpatrick Decl. ¶¶ 19, 24, and in cases in the Second Circuit, *id.* ¶ 23. *See generally* ECF No. 109.

As set forth more fully in the fee papers, a percentage of the fund fee is appropriate. *See generally* ECF Nos. 107-3, 109. As stated by the Second Circuit: "[t]he trend in this Circuit is toward the percentage method which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation[.]" *Visa*, 396 F.3d at 121 (internal citations omitted). *See also* Fitzpatrick Decl. at ¶ 13 (same). Moreover, the requested percentage is reasonable. "[F]ederal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 235–36 (2d Cir. 2007) (affirming 30% fee award of $42.5 million to counsel); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *1 (S.D.N.Y. Nov. 7, 2007) (awarding 30%); *Hayes v. Harmony Gold Min. Co.*,

No. 08 CIV. 03653 BSJ, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (awarding one-third).

Furthermore, in the calculation of the "overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of both the monetary and non-monetary benefits conferred on the Class." *Fleischer v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *15 (S.D.N.Y. Sept. 9, 2015). Here, the $41.5 million in cash and debt forgiveness is all properly considered part of the fund. *See* ECF No. 109 at 15–16 (collecting cases including both debt forgiveness and cash in determining the value of the settlement from which to calculate a reasonable attorneys' fee). Indeed, this is how courts routinely approach the total value of the fund in account fee litigation. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. 6:15MN02613 (D.S.C. Jan. 9, 2020) (ECF 233) (including in total value of $70 million settlement $43 million in cash and $27 million in debt forgiveness); *In re: Checking Account Overdraft Litig. (Commerce Bank)*, No. 1:09-MD-02036-JLK, 2013 WL 11319243 (S.D. Fla. Aug. 2, 2013) (including in total value of $23.2 million settlement $18.3 million in cash and a change in posting practice with value of $4.9 million); *In re: Checking Account Overdraft Litig. (JP Morgan Chase Bank)*, No. 09-MD-02036-JLK (S.D. Fla. Dec. 19, 2012) (ECF 3134) (including in $162 million settlement value $110 million in cash and change in overdraft fee policy with an estimated value of $52 million over a two-year period).

The lack of any objection to the requested fee also weighs heavily in favor of approval and strongly supports that the requested fee is reasonable. *See, e.g.*, *In re Fab Universal S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 284 (S.D.N.Y. 2015) (holding that requested fee was reasonable "given that no objection has been made to the award of fees"); *Moore v. Med. Fin. Servs., Inc.*, No. 2:20-CV-02443-MSN-CGC, 2021 WL 6333304, at *4 (W.D. Tenn. Nov. 30,

2021) ("[N]o objections to either the settlement agreement or the attorney's fees supports a recommendation that the fee request is appropriate."), *report and recommendation adopted*, No. 2:20-CV-02443-MSN-CGC, 2022 WL 178835 (W.D. Tenn. Jan. 19, 2022); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 387 (E.D. Pa. 2019) ("Because there have been no objections pertaining to attorneys' fees, this factor weighs in favor of approving Plaintiffs' fee request."); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-CV-02081-DAD-BAM, 2017 WL 4180497, at *8 (E.D. Cal. Sept. 21, 2017) ("No objections to the proposed settlement were received, and only one class member opted out of the settlement. Therefore, this attorneys' fee arrangement appears to have the support of the class."); *Weathers v. Sprint Commc'ns Co. L.P.*, No. CIV-11-1475-W, 2012 WL 13020701, at *4 (W.D. Okla. Nov. 28, 2012) ("[T]he absence of any objection by Class Members to Settlement Class Counsel's fee-and-expense request further supports the Court's finding that such request is reasonable.") (citing *Anderson v. Merit Energy Co.*, No. 07–cv–00916–LTB–BNB, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) (absence of class members' objection is additional factor that supports court's approval of requested attorneys' fees)).

Simply put, the separate request for fees is subject to Court approval, is reasonable, and supports approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

## 5.    There are no side agreements.

Rule 23(e)(2)(C)(iv) requires the Court to consider any side agreements that must be disclosed under Rule 23(e)(3). This is because side agreements can result in inequitable treatment of class members. Fed. R. Civ. P. 23(C) advisory committee's note to 2018 amendments. Here, there are no side agreements to consider, as every term of the Settlement is found in the agreement itself, so there is no cause to doubt the adequacy and fairness of the Settlement.

**6.    The Settlement treats Class Members equitably relative to each other.**

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Settlement Class Members equitably relative to one other because the amount a Settlement Class Member receives is based on the amount of Retry NSF Fees that Settlement Class Members was charged. As to individual members, more allegedly unlawful fees equate to more relief and, therefore, an allocation that compensates each Settlement Class Member in proportion to the harm each suffered is equitable. *See Maley*, 186 F. Supp. 2d at 367 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."); *In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strengths and values of different categories of claims.").

**D.    The reaction of the Class Members and regulators strongly supports approval.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley*, 186 F. Supp. 2d at 362 (citations omitted). "The favorable reaction of the Classes is strong evidence that the Settlement is fair, reasonable, and adequate." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (granting final approval of class where no member objected and five members sought exclusion); *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 56 (S.D.N.Y.1993) ("another significant factor is the absence of any negative response of the members of the Class."); *Grinnell Corp.*, 495 F.2d at 463 ("the reaction of the class to the settlement" is important). Here, out of more than 1 million Class Members, not a single member objected and only two opted out. Notice Decl. ¶¶ 12–13. Further, none of the 55 regulators that were notified of the Settlement objected. This strongly supports approval.

19

### III.    The Settlement Class meets the requirements for class certification for purposes of entering judgment on the Settlement.

As part of granting final approval, the Court must certify the Settlement Class for purposes of entering judgment on the Settlement. In doing so, the Court looks to the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of any subsection of Rule 23(b), here subsection 23(b)(3) (predominance and superiority). Fed. R. Civ. P. 23. The Court has already found that it will "likely be able to" grant certification, and the Second Circuit has emphasized that Rule 23 should be "given liberal rather than restrictive construction." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Indeed, it is "beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361–62 (E.D.N.Y. 2009) (quotation omitted). Numerous courts have found class certification appropriate in the tougher litigation context in account fee cases. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 141, 142 (D.S.C. 2018); *Smith v. Bank of Hawaii*, No. 16-00513-JMS-WRP, 2019 WL 3297301, at *6 (D. Haw. Jan. 30, 2019), *report and recommendation adopted in part, rejected in part,* 2019 WL 2712262 (D. Haw. June 28, 2019); *Gunter v. United Fed. Credit Union*, No. 3:15–cv–00483–MMD–WGC, 2017 WL 4274196, at *5 (D. Nev. Sept. 24, 2017); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 676 (S.D. Fla. 2011).

The proposed Settlement Class meets all of the requirements for certification.

### A.    The Settlement Class meets the requirements of Rule 23(a).

#### 1.    The Settlement Class is so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." Numerosity "is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are 1,098,997 Class Members (taking

out the two persons who opted out) located across numerous states. Notice Decl. ¶ 9. The Class is "obviously numerous." *See Marisol A.*, 126 F.3d at 376.

### 2. There are questions of law and fact common to the Settlement Class.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Rule 23(a)(2) is a "low hurdle," *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), and "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality requires only that the proposed class members' claims "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, the common question of whether TD Bank's standard agreement permitted it to charge Retry NSF Fees is common to all members of the Settlement Class and is "central to the validity of each one of the claims in one stroke." *Id*. As in other bank fee class actions in the tougher litigation context, the "low hurdle" of commonality is satisfied. *See In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. at 152–53 (finding that, "the answer to the overarching question of whether [the fees were] permissible" would "resolve large swathes [of] the class members' available-balance-based claims in one fell swoop").

### 3. The Class Representatives' claims are typical of the claims of the Settlement Class.

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. The commonality and typicality requirements tend to merge and demonstrating typicality under Rule 23(a)(3) requires only that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."

*Marisol A.*, 126 F.3d at 376. The typicality requirement "is not demanding." *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). The "typicality requirement requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Id.* Typicality is therefore satisfied "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Here, the Class Representatives' claims arise from the same course of conduct as the claims of the Settlement Class, namely TD Bank's practice of charging Retry NSF Fees. Like the members of the Settlement Class, the Class Representatives' claims depend on whether TD Bank's standard contract documents permitted assessment of Retry NSF Fees. As in other account fee class actions, typicality is satisfied. *See Gunter*, 2017 WL 4274196, at *6 ("[The plaintiff] need only show that her breach of contract claim is typical of the breach of contract claims that could be brought by members of the proposed class as she defines it, which she has done.").

### 4. The Class Representatives will fairly and adequately protect the interests of the Settlement Class.

Rule 23(a)(4) requires that the class representatives will "fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Adequacy turns on "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotations omitted).

The first requirement is satisfied by showing that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class members. *Charron*,

731 F.3d at 249. Here, the Class Representatives share the same interests as the Settlement Class in seeking a recovery for Retry NSF Fees charged by TD Bank, because they were all damaged by the same conduct of TD Bank, and the Class Representatives have no interests antagonistic to the Settlement Class. With respect to the second requirement, proposed Class Counsel are highly qualified and experienced in consumer class actions generally and account fee litigation specifically and have worked diligently to prosecute this case. *See* Joint Decl. ¶¶ 31–55, 58.

> **B.** **The Settlement Class meets the requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Here, like in several other account fee cases in the litigation context, these requirements are met because the predominant issue in the litigation is whether Defendant's standard fee practice violated its standard form agreement. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. at 155 (because liability turned "legal and factual issues that are the same for all Plaintiffs and class members" predominance was met).

> **1.** **Common questions of law and fact predominate over any questions affecting only individual members of the Settlement Class.**

"Class-wide issues predominate if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, like in other account fee litigation where courts have found predominance, the common issue of whether TD Bank's Retry NSF Fee assessment practices violate its Agreement or are otherwise unlawful will "depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 676. And the answer to that question drives the resolution of the matter for the Settlement Class as well as for TD Bank, and any other issues are ancillary.

### 2. The Settlement Class is superior to other methods for the fair and efficient adjudication of the controversy.

Resolving this litigation on behalf of the Settlement Class is plainly superior to litigation by individual Settlement Class Members. Most Settlement Class Members lack the financial resources to prosecute individual actions, and the value of any individual claim is too low to justify individual cases. *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 294 (S.D.N.Y. 2012) ("[T]he class members' interests in litigating separate actions is likely minimal given their potentially limited means with which to do so and the prospect of relatively small recovery in individual actions"). This is especially true here against a well-funded defendant like TD Bank. "Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531(FM), 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014). Moreover, no Class Members object to resolving this litigation through the Settlement. Thus, resolution on behalf of the Settlement Class is the superior method of adjudicating this action.

For all the reasons discussed above, the Settlement Class meets all of the requirements for certification for purposes of entering judgment on the Settlement.

**CONCLUSION**

The Settlement achieves an outstanding result in novel litigation that advanced the law and directly and promptly puts real money in Settlement Class Members' pockets and forgives debt without any claims process. It was achieved after the Court's ruling on the motion to dismiss, significant discovery and depositions, and two hard-fought mediations that were presided over by a preeminent mediator. And, perhaps most importantly, with an estimated 99.32% of a Class of 1,098,999 people having received direct notice of the Settlement, not a single person has objected and only two have opted out. And none of the 55 regulators that received notice of the Settlement objected. This overwhelmingly favors that the Settlement is, at the very least, a "fair, reasonable, and adequate" compromise. This Court should grant final approval.

Dated: March 29, 2022                              Respectfully submitted,

Jeff Ostrow (admitted pro hac vice)               s/James J. Bilsborrow
Jonathan M. Streisfeld (admitted pro hac vice)    James J. Bilsborrow
**KOPELOWITZ OSTROW P.A.**                        **WEITZ & LUXENBERG, PC**
One W. Las Olas Blvd., Suite 500                  700 Broadway
Fort Lauderdale, Florida 33301                    New York, NY 10003
Telephone: (954) 525-4100                         (212) 558-5500
Facsimile: (954) 525-4300                         jbilsborrow@weitzlux.com
ostrow@kolawyers.com
streisfeld@kolawyers.com                          Lynn A. Toops (admitted pro hac vice)
                                                  Vess A. Miller (admitted pro hac vice)
Jeffrey D. Kaliel (admitted pro hac vice)         Richard E. Shevitz (admitted pro hac vice)
Sophia Gold (admitted pro hac vice)               **COHEN & MALAD, LLP**
**KALIEL GOLD PLLC**                              One Indiana Square, Suite 1400
1100 15th Street NW, 4th Floor                    Indianapolis, IN 46204
Washington, D.C. 20005                            Telephone: (317) 636-6481
(202) 350-4783                                    Fax: (317) 636-2593
jkaliel@kalielpllc.com                            ltoops@cohenandmalad.com
sgold@kalielpllc.com                              vmiller@cohenandmalad.com
                                                  rshevitz@cohenandmalad.com

*Attorneys for Plaintiffs and the proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I certify that on March 29, 2022, a true and accurate copy of the foregoing memorandum was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ James J. Bilsborrow*