UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/9/22
```

-------------------------------------------------------------- X
MARY JENNIFER PERKS, MARIA NAVARRO-
REYES, individuals, on behalf of themselves, and all
others similarly situated,

                          Plaintiffs,

                 -against-

TD BANK, N.A.,

                          Defendant.
-------------------------------------------------------------- X

18-CV-11176 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

      In conjunction with final approval of the class action settlement of this case, Plaintiffs Mary Jennifer Perks and Maria Navarro-Reyes have filed a Motion for Approval of Attorneys' Fees, Expenses, and Service Awards. Not. of Mot., Dkt. 108. The Motion is unopposed by Defendant. No Class Member or Attorney General has objected to the request for approval of attorneys' fees, expenses, and service awards. The Court has considered the Motion and all papers and arguments submitted in support. The motion is **GRANTED in part and DENIED in part.**

      **ACCORDINGLY, THE COURT FINDS AND ORDERS:**

      1.     A summary of the litigation and settlement are set forth in the Court's separate Final Approval Order at Docket 125.

      2.     The parties have engaged in significant litigation in this class action, which Class Counsel asserts was one of the first cases in the country to challenge the assessment of insufficient funds fees ("NSF Fees") on an item that had previously been returned for insufficient funds (and had an initial NSF Fee assessed) and was later resubmitted by the merchant for payment again and

1

charged an additional NSF Fee ("Retry NSF Fees"). Class Counsel asserts that they conducted significant investigation to formulate the theory of liability reflected in the Complaint and Amended Complaint.

3. The settlement obtained by Plaintiffs and Class Counsel includes a cash Settlement Fund of $20,750,000.00, debt forgiveness of $20,750,000.00, and $500,000.00 in settlement administration costs paid by Defendant. Settlement Agreement, Dkt. 94-2 ¶ 8. The settlement monies and forgiveness will be directly distributed to the Class Members, without any claims process, with the cash component paid by check to former customers of TD Bank and by a direct account credit to current customers of TD Bank. *Id.* ¶ 14. Class Counsel estimates that this method of distribution of settlement proceeds will save more than $193,000 compared to the settlement administration costs that would have been incurred if checks had been mailed to all Class Members. Pls. Mem., Dkt. 109 at 9 (citation omitted). In addition, Defendant assumed the cost of identifying Class Members. *Id.* Class Counsel estimates that, if the value of debt forgiveness is calculated at 100 cents on the dollar, the value of the settlement represents a recovery of between 42% and 70% of the maximum possible recovery at trial. *Id.* at 2. No funds will revert to Defendant.

4. In conjunction with final approval of the settlement, Plaintiffs request the following amounts to be paid out of the Settlement Fund: (1) attorneys' fees to Class Counsel in the amount of $10,375,000 (25% of the sum of the $20,750,000.00 Settlement Fund and the $20,750,000 in Fee Forgiveness but 50% of the cash portion of the Settlement Fund); (2) reimbursement of expenses of $95,286.87 to Class Counsel, compromised largely of expert witness fees ($70,350) and mediation costs; and (3) service awards of $7,500 each to the two Class Representatives ($15,000 total). *Id.* at 7, 10, 23–24.

5. Notice of the requested attorneys' fee was provided to the Class Members and, pursuant to the Class Action Fairness Act, to 55 United States, State, and Territory Attorneys General. Pls. Settlement Approval Mem., Dkt. 114 at 1. None objects to the amount of attorneys fees requested.

6. Under Federal Rule of Civil Procedure 23(h) and the common fund doctrine, courts recognize that Class Counsel and the Class Representatives are entitled to be compensated from the settlement.

## I. Attorneys' fees in the amount of 25% of the cash and 5% of the debt forgiveness provided by the settlement are reasonable in this case.

7. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). It is well-established that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S 472, 478 (1980) (citation omitted).

8. In the Second Circuit, courts have discretion to use the lodestar or percentage-of-the-fund method. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)); *see also Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405, 14-CV-8714, 2015 WL 10847814, at *14 (S.D.N.Y. Sept. 9, 2015) ("[T]he percentage method continues to be the trend of district courts in this Circuit.") (citation omitted); Declaration of Brian T. Fitzpatrick ("Fitzpatrick Decl."), Dkt. 95-5 ¶¶ 12–13 (same) (citations omitted). This Court uses a percentage of the fund method, but with a lodestar cross-check. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

9. When calculating the overall settlement value for purposes of the "percentage of the recovery" approach, the Court has to consider the value of both the monetary and non-monetary benefits conferred on the Class. *Fleisher*, 2015 WL 10847814, at *15 (citation omitted); *see also id.* at n.7 (citation omitted); *Coleman v. Alaska USA Fed. Credit Union*, No. 19-CV-00229, slip op. at 17–18 (D. Alaska Nov. 17, 2021), Dkt. 93; *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-CV-1262, 2002 WL 31663577, at *7, *28 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) (awarding fees at 28% of the settlement value, which included cash and credit notes); *Velez v. Novartis Pharms. Corp.*, No. 04-CV-09194, 2010 WL 4877852, at *4, *18 (S.D.N.Y. Nov. 30, 2010) (awarding fees on value of settlement, including monetary and nonmonetary relief).

10. Plaintiffs are requesting attorneys fees equal to 25% of the value of cash and debt forgiveness provided by the settlement, which they say amounts to $10,375,000. Pls. Mem. at 14. In arriving at their requested fees, Class Counsel treats debt forgiveness — which accounts for half of the value of the Settlement Fund — as the equivalent of a monetary benefit. *Id.* Although the Court agrees that, in certain circumstances, cash and retirement of debt are economically equivalent, in the context of this case, the Court disagrees that the debt forgiveness portion of this settlement should be treated as the economic equivalent of cash payments to members of the Settlement Class. Because Class Counsel has provided no evidence that Defendant ever sought to collect on the debt that it will now officially "forgive"; because the statute of limitations has likely run on much of that debt, rendering it non-collectable even if TD Bank tried to collect it (the Class is defined to include bank customers who were assessed repeat NSF fees as early as 1998, *see*

4

Settlement Agreement ¶ 24[1]); and because, for the approximately 80,000 Settlement Class members that will receive only "debt relief," their debt to TD Bank will be reduced, but not eliminated, *see* Joint Decl., Dkt. 110 ¶ 7, the Court finds that each dollar of debt forgiveness is not the functional equivalent to the Class Member as a dollar in cash. By way of analogy, in class actions in which the settlement class receives benefits that could be affixed with a dollar amount, such as coupons or vouchers, but in which the likelihood of the coupon or voucher actually being used is low, courts routinely discount the face value of the coupon or voucher when ascertaining the value of the settlement as part of an award of attorneys' fees. *See*, *e.g.*, *Rodriguez v. It's Just Lunch Int'l*, No. 07-CV-9227, 2020 WL 1030983, at *10 (S.D.N.Y. Mar. 2, 2020) (valuing the settlement as the amount of the cash fund without including the nominal voucher amount given the low likelihood that vouchers would be redeemed). In scenarios in which a defendant creditor was unlikely ever to collect on the debt, the value of debt forgiveness to the class may also be lower than the dollar amount forgiven. *See*, *e.g.*, *Curry v. Money One Fed. Credit Union*, No. 19-CV-3467, 2021 WL 5839432, at *4 (D. Md. Dec. 9, 2021) (collecting cases). In sum, it is appropriate for the Court to conduct its own analysis of the actual benefit conferred on Settlement Class members when ascertaining the value of the Settlement for purposes of awarding a fair amount of attorney's fees. *Parker v. Time Warner Ent. Co., L.P.*, 631 F. Supp. 2d 242, 264–70 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010).

11. The Court finds that the $20,750,000 Defendant will provide in the form of debt forgiveness, which will average roughly $45.43 per closed account, *see* Joint Decl. ¶ 7, is worth substantially less to the Class than the $20,750,000 Defendant will provide in cash. Given the

---

[1] The Class Period is defined based on the state in which each account was opened. Settlement Agreement ¶ 24. For customers from Maine, the class period begins on November 30, 1998; for customers who reside in nine states, the class period begins on November 30, 2008; for residents of two states, the class period begins on November 30, 2010; and for residents of 19 states, the class period starts on November 30, 2012. *Id.*

paucity of data provided by Class Counsel to assist the Court in evaluating the true value of "debt forgiveness" to the Class Members,[2] the Court finds it appropriate to reduce the value to the Class of that portion of the Settlement to 5% of the stated value, or $1,037,500. Class Counsel has requested an award equal to 25% of the value of the Settlement. The Court finds the requested percentage to be in line generally with attorneys' fees in Class Settlements; the Court simply disagrees with the assessed value of the Settlement. Viewing the value of the Settlement as the cash payment of $20,750,000 plus 5% of the debt forgiveness, or $1,037,500, the total value of the Settlement to the Class is $21,787,500. The requested 25% of that value would yield attorney's fees of $5,446,875. Using the current lodestar represented by Class Counsel, if the Court were to grant that amount in attorney's fees, the multiplier would be 2.97.[3]

12.     A fee of $5,446,875 is appropriate under the factors courts in the Second Circuit consider, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (internal quotation marks and citation omitted) (alteration in original).

---

[2]     A number of data points could have been helpful in assessing the true value to Class Members of this "debt relief", such as: the frequency with which TD Bank ever attempts to collect from a former customer the negative balance existing when the customer closes an account; the percentage of class members receiving "debt relief" whose debt to TD Bank was uncollectable because the statute of limitations has expired; or the impact on one's credit score of having an outstanding debt that is being reported to the credit agencies reduced by approximately $50 but not eliminated.

[3]     The lodestar is only being considered as a cross-check. A 2.97 multiplier is broadly within the normal range of attorneys' fees in class action settlements. *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six") (citation omitted). The Court notes, however, that the lodestar in this case seems somewhat bloated. According to Plaintiffs, Class Counsel spent 309 hours in pre-litigation investigation, drafting the Complaint, and researching Defendant's affirmative defenses. *See* Joint Decl., Table 1. While the theory of the case might have been novel when this case was filed, that is an excessive amount of time. Class Counsel also represents that they spent 1,292.65 hours on discovery. *Id.* The number of hours are not excessive, but the firms that contributed those hours were primarily billing partner time (at $780/hour and $759/hour), suggesting that a substantial amount of the discovery work was done by partners. *Id.*; *see also id.* ¶ 18. The Court questions whether a rational paying client would have agreed to have discovery conducted by partners at their normal billing rate.

13. Class Counsel devoted significant time and resources to this litigation. *See* Joint Decl., Table 1.

14. The litigation was substantial, affecting a nationwide practice that had continued for years. "Class action suits in general have a well-deserved reputation as being most complex," *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (cleaned up), and this suit involved a novel theory.

15. The risk involved in the litigation was substantial. This case involved bank processing and electronic payment practices and was brought against a Defendant with substantial resources to mount a costly and potentially successful defense. At the time the case was filed, Plaintiffs' theory was untested. There was no guarantee that the Class would succeed in a contested class certification battle, a battle of the experts, a potential Rule 23(f) appeal of class certification, summary judgment, trial, or appeal of any verdict. Class Counsel prosecuted the case on a contingent basis, so they risked never being paid for their work and never being reimbursed their expenses, if the case turned out to be unsuccessful.

16. Class Counsel has extensive knowledge of and experience in prosecuting class actions. Class Counsel represents that they have successfully litigated and resolved many other consumer class actions against major corporations, including financial institutions. The quality of the legal representation "is best measured by results." *Goldberger*, 209 F.3d at 55. In this case, Class Counsel achieved a good result.

17. As set forth above, the contemplated fee of 25% of the cash and 5% of the debt forgiveness is in line with the fees awarded in other similar settlements. *Velez*, 2010 WL 4877852, at *21 (collecting cases and noting that a nationwide study found the median award of attorneys' fees in class action settlements to be 25% of the recovery) (citations omitted); *Curry*, 2021 WL

5839432, at *4 (noting that in cases in which the settlement is only in the form of debt forgiveness, courts rely on the lodestar method) (citations omitted).

18. Finally, public policy favors compensating lawyers so that they have an incentive to bring cases that serve the public interest. *Goldberger*, 209 F.3d at 51 (citation omitted). This policy is particularly important to ensure that claimants who lack the financial means to seek a recovery on their own behalf can obtain counsel who can pursue their claims in an economically viable fashion. *See Fleisher*, 2015 WL 10847814, at *22 (citation omitted).

19. Given all of these facts, the Court finds attorneys' fees totaling $5,446,875 are reasonable.

## II. Most of the requested litigation expenses are reasonable.

20. In addition to attorneys' fees, "[i]t is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Guevoura Fund Ltd. v. Sillerman*, Nos. 15-CV-07192, 18-CV-09784, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019) (citations omitted). Class Counsel are entitled to reimbursement of litigation expenses incurred "that are incidental and necessary to the representation." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (cleaned up). Expenses are reimbursable if they are of the type normally billed by attorneys to paying clients. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). Standard reimbursable expenses include, *inter alia*, professional fees paid to counsels' damages expert. *In re Merril Lynch Tyco Res. Sec. Litig.*, 249 F.R.D. 124, 144 (S.D.N.Y. 2008); *Guevoura Fund Ltd.*, 2019 WL 6889901, at *22.

21. Class Counsel requests reimbursement of $95,286.87 for actual costs incurred in connection with the prosecution and settlement of this action. Specifically, those costs and

expenses consist of filing fees and service of process costs ($975.07), pro hac vice admission fees ($606.50), expert witness fees ($70,350.00), litigation support vendors ($9,381.55), and multiple sessions with the mediator ($13,973.75). Pls. Mem. at 23. Although Class Counsel was incentivized only to incur reasonable and necessary expenses, in one respect the Court finds that expenses incurred by Class Counsel were not reasonable and should be reduced.

22. Plaintiffs' expert was Arthur Olsen. In a supplemental affidavit, *see* Dkt. 124, Mr. Olsen provided his billing records. The records are bare bones, and provide neither the Court nor Class Counsel with substantial insight into his activities. The Court appreciates that there was a substantial amount of "data crunching" required, but Mr. Olsen's total fee, for an expert who was never deposed, is on the high side. Upon examination of his monthly invoices it is apparent that he bills in hour increments, a billing practice that has not been accepted from attorneys for years. The Court, therefore, reduces the amount of his fee that is payable from the Settlement Fund by 15%, which reduces the reimbursement of that expense to $59,797.50. *See*, *e.g.*, *Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 501 (S.D.N.Y. 2019) (vagueness of expert's bill merited 15% reduction in grant of expert fees); *Favors v. Cuomo*, 39 F. Supp. 3d 276, 310 (E.D.N.Y. 2014) (reducing expert fees by 10% because the expert's records tracked time only in full hours); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (noting that vague entries provide a basis for percentage reductions, and collecting cases employing reductions of 15%, 20%, and 50% on that basis); *La Barbera v. Pass 1234 Trucking, Inc.*, No. 04-CV-1364, 2007 WL 2908175, at *7 (E.D.N.Y. Sept. 28, 2007) (reducing attorneys' hours billed by 15% in part because the method of billing followed 15-minute increments "instead of the more traditional six minutes") (citations omitted); *Destefano v. Astrue*, No. 05-CV-3534, 2008 WL 623197, at *4 n.8 (E.D.N.Y. Mar. 4, 2008), *report and recommendation adopted*, 2008

WL 2039471, at *1 (E.D.N.Y. May 9, 2008) (noting that imprecise time sheets and the use of block entries is a basis for reducing an award, and collecting cases finding the same).

### III.     The requested service awards are reasonable.

23.     "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Torres v. Gristede's Operating Corp.*, Nos. 04-CV-3316, 08-CV-8531, 08-CV-9627, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (citation omitted).

24.     Here, Plaintiffs invested significant time in litigating this case on behalf of others and risked their reputations in doing so by publicly disclosing their personal financial difficulties. Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute this action and reach the settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; (3) providing discovery documents; (4) participating in conferences with Class Counsel; and (5) with respect to Plaintiff Perks, sitting for a deposition. The $7,500 awards sought are within the range awarded in this Circuit and are reasonable here.

ACCORDINGLY, THE COURT HEREBY APPROVES AND AWARDS the following payments to be made from the Settlement Fund:

A. Attorneys' fess to Class Counsel in the amount of $5,446,875.

B. Reimbursement of expenses to Class Counsel in the amount of $84,734.37.

C. Service awards of $7,500 to each of the two Class Representatives ($15,000 total).

**SO ORDERED.**

Date: May 9, 2022

_____
VALERIE CAPRONI
United States District Judge